FRASER, Executor, Respondent, vs. THE ÆTNA LIFE INSUR-
ANCE COMPANY, Appellant.

*April 26—May 13, 1902.*

*Life insurance: Forfeiture: Conditional revival of policy: False cer-
tificate of good health: Agency: Ratification: Good faith: Re-
ceipts for overdue premium: Admission of conditional liability:
Waiver of forfeiture: Estoppel: Verdict by consent: Rescission:
Retention of premium: Offer to return: Judgment.*

1. After a life insurance policy had lapsed for nonpayment of pre-
mium, proof of good health was demanded as a condition pre-
cedent to reviving it. The insured being absent from home,
another person applied on his behalf for a revival of the policy,
certifying in his name, as his agent, that he was in good health,
and forwarded the premium. The application expressly stated
that if the representation as to good health should prove un-
true the policy should cease and be treated as if it had not
been revived. In fact the insured was then at the point of
death, and died two days later. The company, not knowing of
the condition of the insured, gave its renewal receipt for the
premium. *Held*, that the policy had been only conditionally re-
vived, and that the company was not liable thereon.

2. It is immaterial, in such case, whether or not the person apply-
ing for the revival had authority to make the representation as
to the health of the insured. The application and representa-
tion were parts of a single transaction, and ratification of one
would be a ratification of the other.

3. It is immaterial, also, whether the representation was made in
good faith or otherwise. The revival was conditioned upon
its truth, not upon its good faith.

4. Although the company was informed, when the application for
revival was made, that the insured had been absent from home
for several months, that fact does not indicate that the com-
pany did not, in issuing the renewal receipt, rely upon the rep-
resentation as to his good health.

5. The overdue premium was paid by a corporation of which the
insured was president, and by request the insurance company,
in addition to its renewal receipt, gave the corporation a re-
ceipted bill showing payment by it of the premium in full.
*Held*, that this did not displace the express condition upon
which the money was paid and accepted.

6. Upon receiving proofs of death, showing the falsity of the representation as to the health of the insured, the company wrote to his executor stating that because of such falsity the policy could not be recognized as valid for the full amount, but that upon proper claim being made the company would pay a smaller sum, due thereon, by its terms, as a lapsed policy. The company also called attention to the fact that the assignment by the beneficiary to the executor was not properly stamped, and asked for certified copies of the will of the insured, etc. The executor thereupon affixed additional stamps to render the assignment valid, and sent the papers asked for. *Held*, that the company had not misled the executor into incurring expense or doing or omitting to do anything in the belief that the policy would be recognized as other than a lapsed policy, and that there was therefore no waiver of the forfeiture or estoppel to rely thereon as a defense.

7. A verdict directed for plaintiff by consent of both parties, subject to decision of the court on all issues of law and of fact after argument to be had, leaves the case to be determined on its merits unaffected by the verdict.

8. The policy having been revived conditionally only, failure of the condition *ipso facto* restored the former situation without any act of the company in the way of rescission or return of the premium.

9. Mere retention of the premium, after obtaining knowledge of the facts, down to a time subsequent to the commencement of an action on the policy, did not indicate an intention to waive the forfeiture, there being a manifest purpose on the part of the company to account for the money to the owner of the policy whenever he would receive it, and the attitude of the latter being such as to indicate that a tender would be useless.

10. In an action on the policy, an offer in the answer to return the premium is an admission of liability to that amount, and, there being no offer of judgment or payment of the money into court, plaintiff should have judgment for said amount with costs.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action on a $5,000 insurance policy issued to Albert Landreth April 10, 1889, on a plan requiring a readjustment every ten years of the amount of premium to be paid yearly. The premium was fixed at $39.35 each six months for the

first period. At the end thereof the policy was renewed on the same terms and conditions as before. The assured assigned the policy to his wife. He died April 15, 1899. Formal proofs of the maturity of the policy were duly made. The widow assigned the policy claim to the executor of her husband's will. All matters requisite to a cause of action on the policy in favor of such executor were set forth in due form in the complaint. The defendant resisted payment, claiming that the policy was forfeited for nonpayment of the premium due April 10, 1899; that the default left no claim on the defendant except for two thirds of the reserve and surplus credited to the policy, amounting to $189 at the date of the default, on condition of its being surrendered within one year after such default and a claim being made therefor.

The following facts were established by the evidence. The policy provided, in effect, as follows: Failure to pay any instalment of premium at the time stipulated in the policy shall terminate the insurance contract, subject to an option on the part of the assured, if all premiums upon the policy shall have been paid for the full period of three years, to receive two thirds of the reserve and surplus credited to the policy at the time of the default, or a mere paid-up life policy for such sum as the whole of such accumulations, applied in the manner specified, will buy, in case the assured shall make his choice between the alternatives and make application to the company accordingly, at the same time surrendering the policy, within one year after the default. The assured failed to pay the premium due April 10, 1899. He had then been absent from home about four months. His home and place of business were at Manitowoc, Wisconsin. His business was largely conducted in the corporate name of The Albert Landreth Company, of which he was president. During his absence his mail came to the company as a rule, and was handled by J. L. Brooks, the secretary of the corporation. About April 13, 1899, a letter was so received from defendant, dated

April 12, 1899, and read by Brooks. It was to the effect that the policy had lapsed for nonpayment of the premium of $39.35 due April 10, 1899, and that upon receipt of such amount, together with satisfactory proof that the assured was in good health, as per a form inclosed, the policy would be revived. Thereupon Brooks, in the name of his corporation, sent such amount to defendant, accompanying the same with such form, made out and signed by himself in the name of the assured, and with a letter acknowledging the receipt of a letter from the defendant dated April 12, 1899, stating that a previous letter from the company, relating to the policy, had been forwarded to Mr. Landreth, who had been away from home for four months, and suggesting the possibility of his not having received it, and saying: "We take the liberty to forward to you premium, $39.35, draft for which you will find inclosed. The same we trust will be satisfactory. Please acknowledge receipt and greatly oblige." The following is the form referred to, filled out and signed as it was returned to the company:

"Manitowoc, Wis., Apr. 13, 1899.

"For the purpose of obtaining the revival of policy No. 173,800 issued by the *Ætna Life Insurance Co.*, on the life of A. Landreth, which policy lapsed because of the nonpayment of premium due on the 10th day of April, 1899, I hereby certify that the said myself is now in good health, and there is nothing in my habits or condition which is likely to impair my health or shorten my life. And if this representation shall prove in any respect untrue, said policy shall cease and be treated in the same manner as if it had not been revived. I also agree that by accepting this premium now, the said company incurs no obligation to accept any future premium after it becomes due.

"Witness,                                ALBERT LANDRETH,
        "M. Edwin Roberts.                      Per J. L. Brooks."

On the margin were written these words: "This certificate should be signed by the beneficiaries under the policy, or by the person who pays the premium, as their agent." A form

was inclosed for defendant to use in acknowledging receipt of
the money. A renewal receipt was sent to Brooks April 15,
1899, accompanied by a letter as follows: "I have your letter
of the 13th, with health certificate and remittance of pre-
mium of A. Landreth, and inclose his renewal, also the receipt
on your form." The form was one customarily used by the
Albert Landreth Company in its business transactions. As
filled out it was a bill against the Albert Landreth Company
for $39.35 for life insurance premium, receipted as paid in
full.

The statement in the health certificate as to Landreth being
in good health was false. He was, when certified to be in
good health, at the point of death. He had then been under
the physician's care for thirteen days. He died two days
thereafter. Defendant was notified thereof as early as April
24, 1899. Brooks did not know of Landreth's condition when
he forwarded the certificate of health. The Albert Landreth
Company had authority to pay claims against Landreth, par-
ticularly for his life insurance, and Brooks had authority to
act for the corporation, but neither the corporation nor
Brooks had authority to make representations as to the as-
sured's health in connection with the payment of premiums
upon his policy, other than that inferable from the authority
to pay premiums. When defendant sent the renewal receipt
it had no information as to Landreth's health except what was
contained in the health certificate.

Proofs of the maturity of the policy were received about
June 30, 1899. Such proofs disclosed that Landreth, at the
date of the health certificate, was under treatment for the dis-
ease of which he died. July 31, 1899, defendant wrote to
the executor advising him that the duplicate assignment by
Mrs. Landreth to him was defective in that it did not bear
the proper amount of revenue stamps, asking him for in-
formation as to whether the assignment in his possession was
in the same condition, and to forward to it a certified copy

of Landreth's will and the appointment of the executor, and notifying him that the policy could not be recognized as valid for the full amount of $5,000 because the representations as to the health of the assured, upon the faith of which it was revived, were false; but that the company would pay on the policy the amount the assured was privileged to claim thereon after forfeiture, $729, conditioned upon a claim being made therefor within one year after the lapse, accompanied by a surrender of the policy, and would also return the $39.35 sent to it by Brooks with the false health certificate, the offer being made without prejudice to the rights of defendant in case it was not accepted. In response thereto the executor wrote to defendant, inclosing the papers asked for and stating that the original assignment of the policy to him contained, in the first instance, but a ten-cent revenue stamp, but in accordance with the demand of defendant $4 in stamps in addition had been placed thereon, and that the executor deemed the policy valid for the full amount indicated upon its face. August 4, 1899, at the office of the Albert Landreth Company, defendant tendered to Brooks the amount sent with the false health certificate. He refused to receive the same, referring the person making the tender to the executor.

The action was commenced November 25, 1899. Defendant seasonably answered alleging, among other things, an offer to pay back the $39.35 to Brooks, and that the same having been refused the money had been deposited with the clerk of the circuit court subject to the order of the court. The money was not in fact paid into court. At the close of the evidence the attorneys for the parties agreed that the court might direct a verdict in favor of plaintiff for $5,212.58, subject to the decision of the court upon all the issues in the case. Thereafter the court decided that the policy was revived by the payment of the $39.35 notwithstanding the health certificate was false, because, first, the representations made by Brooks therein were not fraudulently made; second,

because he had no authority to make the representations; third, because the defendant did not rely on the health certificate. Judgment was accordingly rendered for plaintiff for the amount of the verdict. The questions discussed in the opinion were saved for the purposes of an appeal by proper exceptions.

For the appellant there were briefs by *Bird, Rogers & Elver,* and oral argument by *George W. Bird.*

For the respondent there was a brief by *Nash & Nash,* and oral argument by *L. J. Nash.*

MARSHALL, J.   We are unable to see any merit in the grounds upon which the trial court ordered judgment for plaintiff.   It is conceded that the policy was forfeited for nonpayment of the premium due April 10, 1899; that satisfactory proof of good health of the assured was demanded as a condition precedent to reviving it; that proof in that regard was submitted by the person who assumed to have authority to and did send the money to pay the premium; that the application for the renewal of the policy stipulated that favorable action thereon should not be effective if the representations as to the assured being in good health should prove untrue; that the company forwarded the renewal receipt in response to that application; and that such representations were false. Whether Brooks had authority in fact, express or implied, to make the representations, is not material.   He made them, and the application for a revival of the policy, assuming to act for the assured, and the company granted the application conditioned upon such representations being true.   His acts in sending the application and the money to pay the premium, and in making the representations contained in the health certificate, are inseparable.   They constitute together a single transaction which cannot be deemed ratified in part and repudiated in part.   No principle of law is better understood than that ratification of a part of an unauthorized trans-

action confirms the whole. *Fargo v. Ladd,* 6 Wis. 106; *Lachner v. Salomon,* 9 Wis. 129; *Paine v. Wilcox,* 16 Wis. 202. Obviously, if Brooks had authority to apply for a reinstatement of the policy, he had authority to make the necessary representations to secure such reinstatement if the facts would warrant it; and if he had no authority to make such representations, he had no authority to make the application. Ratification of his authority as to one thing ratified his authority as to the other. It is too elementary to justify us in discussing the matter, that a person cannot have the benefit of a transaction and repudiate the responsibilities thereof. If he insists upon the one, he subjects himself to the other as regards civil remedies. *Morse v. Ryan,* 26 Wis. 356; *Kickland v. Menasha W. W. Co.* 68 Wis. 34, 31 N. W. 471; *Carpenter v. Momsen,* 92 Wis. 449, 65 N. W. 1027, 66 N. W. 692; *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375. The principle under discussion is stated by standard text writers thus:

'The principal cannot avail himself of the benefits of the act of a person assuming to represent him in a transaction and repudiate its obligations. Having, with full knowledge of all the material facts, ratified, either expressly or impliedly, the act assumed to be done in his behalf, he thenceforward stands responsible for the whole of it to the full extent to which the agent assumed to act, and he must abide by it whether the act be a contract or a tort and whether it results to his advantage or detriment.' Mechem, Agency, § 167.

It follows that the claim, as regards the means by which the conditional revival of the policy was secured, stands precisely the same as if used by Landreth himself.

It necessarily follows from what has been said that whether Brooks fraudulently misrepresented the condition of Landreth in applying for a renewal of the policy, is entirely immaterial. It was revived conditionally. The condition was that the representations as to the assured's health were true. The court had no right to change that to a mere condition as

to the good faith of the representations. Appellant had a right to allow a revival of the policy upon any terms it saw fit to impose. The condition that the assured, at the date of the application for the revival, was in good health, was imposed. That was agreed upon between the company on the one side and the assured, acting by Brooks, on the other. We say "acting by Brooks, on the other," because the claim made upon the policy gives original validity to the assumption of authority by Brooks. It is no part of the proper business of a court to change that agreement so as to give the company the benefit only of a good-faith representation of the existence of a fact in place of a guaranty of its existence. If courts possessed any such function as that, the right of persons to freely contract with each other would always be subject to judicial scrutiny, and their contracts changed to suit judicial notions of fairness.

The learned trial court concluded that appellant did not rely on the representations contained in the health certificate, from the fact that it was informed by Brooks' letter, accompanying the representations, that Landreth had been away from home for several months. We are unable to see how such circumstance can reasonably be said to indicate that appellant did not, when the renewal receipt was issued, suppose that Brooks acted upon satisfactory evidence to him of the truth of his statements. However, by the terms of the renewal, knowledge on the part of the person making the representations was not the thing of controlling significance. Whether he possessed such knowledge or not was rendered of little significance, since it was stipulated that if Landreth was not in fact in good health at the date of the representations the policy should be deemed forfeited the same as if no attempt to revive it had occurred. The language is as follows: "If this representation shall prove in any respect untrue, said policy shall cease and be treated in the same manner as if it had not been revived." If there is any room for a rea-

sonable inference of fact that appellant did not rely upon that in issuing the renewal receipt, we confess inability to discover it. It might well have relied thereon and at the same time doubted Brooks' personal knowledge of the matter, or even believed that he did not possess any such knowledge; though we are unable to perceive any reason for holding that it did not suppose he made the certificate from his personal knowledge in respect to the matters therein contained.

Counsel for respondent point to the circumstance of appellant's complying with Brooks' request for a receipted bill to the Landreth Company, showing payment by it in full of the premium required to renew the policy, as of some significance. That does not in any way displace the stipulation as to the payment not being effectual to renew the policy in the event that the assured was not in fact in good health as represented. This is not like many cases found in the books, of money being merely conditionally received upon an overdue premium. It is much stronger in favor of the insurer in that it was expressly sent, as well as received, conditionally. Appellant was not requested, as in many cases, expressly or otherwise, to accept the money as upon a renewal of the policy absolutely. It was expressly stipulated, as before indicated, that the acceptance of the money should be of no effect if the condition that the assured was in good health as represented was not satisfied. In view of that there is no inconsistency between the condition upon which the money was paid and accepted and the mere evidence contained in the receipt to the Albert Landreth Company that the money had come to the hands of the appellant.

Respondent's counsel contend that the judgment is right regardless of the ground upon which the trial court rested it, because, in the letter of July 31, 1899, appellant called the executor's attention to the fact that the assignment to him did not bear the requisite amount of revenue stamps, and requested information as to whether the duplicate in the latter's

hands was in the same condition; and further, that the executor should furnish it a certified copy of Landreth's will and of the appointment of an executor thereof; and in response thereto $4 in revenue stamps were added to the duplicate assignment, and the papers requested were sent to appellant. Those circumstances, if unaffected by others, would operate to waive the forfeiture in question. They do not stand alone. In the letter referred to, the executor was distinctly informed that the forfeiture, caused by default in the April 10, 1899, payment, would be insisted upon, because the conditions upon which the policy was restored had failed. A probable or possible liability of the company, however, for $729 under the policy, was suggested, which it offered to pay, and to return the premium paid after default, such offer not to prejudice the rights of the company if not accepted. By section 7 of the policy, after forfeiture thereof it stood for the amount mentioned in appellant's letter upon condition of the same being applied for within twelve months after such forfeiture and the policy being surrendered to appellant. In view of that the evident meaning of appellant's letter is that it did not intend to waive the forfeiture in question, but did intend to recognize its conditional liability stipulated for as regards lapsed policies, not waiving the requirement as to application and surrender within twelve months from the date of the default causing the lapse. The request for information as to the validity of the assignment to the executor, and for certified copies of papers, was inconsistent with a waiver of forfeiture, since the executor was clearly informed it would be insisted upon. It was perfectly consistent with the existence of a valid claim upon the company for $729, which it offered to pay. Appellant did not, by the letter, mislead the executor into incurring expense or doing or omitting to do anything in the belief that the policy would be recognized as valid for any amount in excess of $729. In the attitude of appellant indicated by the letter and its subse-

quent course, we observe no shifting of positions as regards the forfeiture, to the prejudice of respondent or those for whom he stands; so the rule for which counsel contend does not apply. Such rule is effective where an insurance company, having once recognized the validity of a policy with knowledge of a defense thereto, denies its liability, the owner of the policy having in the meantime been misled, by the position first taken, into subjecting himself to some substantial loss. The cases in this court on the subject are very numerous. The following are but a few of them: *Kidder v. Knights Templars & M. L. I. Co.* 94 Wis. 538, 69 N. W. 364; *Cannon v. Home Ins. Co.* 53 Wis. 593, 11 N. W. 11; *Webster v. Phœnix Ins. Co.* 36 Wis. 67; *Jerdee v. Cottage Grove F. Ins. Co.* 75 Wis. 345, 44 N. W. 636; *Northwestern Mut. L. Ins. Co. v. Germania F. Ins. Co.* 40 Wis. 446; *Gans v. St. Paul F. & M. Ins. Co.* 43 Wis. 108. The foundation principle of the rule is as well stated in *Cannon v. Home Ins. Co.* as anywhere in our decisions:

'An insurance company cannot be permitted to call upon a policy holder to do some act, indicating that the validity of the policy is conceded, and, after he has, in reliance thereon, gone to some expense and trouble, change its position and claim that the policy is not in force. Courts condemn such attempts to avoid liability, really by the doctrine of estoppel *in pais,* though more is said in the decisions on the subject about the doctrine of waiver than that of estoppel.'

In harmony therewith, courts have held that though a policy holder incurs some expense or is put to some inconvenience by responding to a call of the insurance company, with knowledge of facts rendering the policy void, its defense is not waived if the policy holder is in no way misled thereby,— if he is distinctly informed that the company will insist upon the forfeiture. There is no room in such a situation for the operation of the doctrine of estoppel *in pais.* There is no change of position to the prejudice of the policy holder, so there is no waiver of a known defense. *Freedman v. Fire*

*Asso.* 168 Pa. St. 249, 32 Atl. 39; *Boyd v. Vanderbilt Ins. Co.* 90 Tenn. 212, 16 S. W. 470; 4 Joyce, Ins. § 3370. Under our decisions an insurance company cannot save a known defense to a policy and put the owner of the policy to any substantial expense or inconvenience in respect to his claim in responding to its calls for proofs or requests, or doing some other thing in reasonable expectation of the validity of the policy being recognized, unless the attitude of the company in the matter be such as to so clearly inform the policy holder that it does not consider the policy claim valid, and the grounds thereof, and that the invalidity will be insisted upon, that the act of the policy holder must be deemed wholly voluntary. In *Cannon v. Home Ins. Co.* 53 Wis. 593, 11 N. W. 11, the attorney of the policy holder, in response to an inquiry of the company as to its position in regard thereto, was told that, if the assured supposed himself to be possessed of a valid claim against the company on the policy, he should present his proofs as required by the insurance contract, and that upon receipt thereof the matter would receive prompt attention by the company and its attitude in respect thereto be made known to the attorney. Proofs were furnished accordingly, and it was held that the company's reply effectually waived any defense to the policy of which it had knowledge at the time of such reply. In the letter relied upon here as the foundation for a waiver of the forfeiture, the policy holder was fully informed that the invalidity of the policy would be insisted upon, and the grounds thereof were stated. The position then taken, both as regards the defense of forfeiture and the rights of the executor upon the policy as a lapsed contract, was, as before indicated, consistent with the request for papers and information as to the validity of the assignment to the executor, and consistent with the subsequent attitude of the appellant in defending against respondent's claim.

Respondent's counsel further contend that appellant's con-

duct, as regards the premium paid after default, shows to a reasonable certainty an intention to waive the result of the default, or at least that the evidence pointing that way raised a question of fact for the jury, and that the verdict in that regard should be deemed conclusive. We do not consider that there is any finding by the jury to which the rule invoked by counsel can be applied. The verdict was taken by consent of both parties as a mere conclusion of law on facts assumed, for the time being, to exist for the purpose thereof. It was directed by the court with the understanding that the final result should wait upon the decision of the court upon all the issues of law and fact. The situation would not be different if a jury trial had been entirely waived and the case submitted to the court for decision. The verdict of the jury does not cut any figure in the case. We have already shown that what occurred before Landreth's death does not indicate that appellant intended to waive the forfeiture if the representations which accompanied the payment of the premium were false.

There is left to be considered the question of whether the attitude of appellant as regards the premium after it obtained knowledge of the falsity of the certificate of good health shows an intention to waive the forfeiture regardless thereof. It pertains to waiver, strictly so called. There is little or no element of estoppel involved therein. In the absence of such element affecting appellant's rights, it cannot properly be held to have waived them in the absence of proof showing that it had knowledge, at the time the waiver is claimed to have occurred, of all the material facts that would probably have then influenced its conduct. A waiver, strictly so called, is "the result of an intentional relinquishment of a known right." *Rice v. Fidelity & D. Co.* 103 Fed. 427; 2 Bacon, Ben. Soc. § 423; *Lewis v. Phœnix M. L. Ins. Co.* 44 Conn. 72, 91. / Such intention may be shown by conduct as well as by express agreement. Conduct indicating a waiver may be so

inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary. Then the intent to waive appears as a matter of law. It so appears in case of an unconditional acceptance of a premium on a policy of insurance after it has lapsed for nonpayment of the premium at the proper time or for any other cause to the knowledge of the company. It is otherwise where payment is accepted conditionally. In the former case the attitude of the insurer is inconsistent with any other theory than that it consents to a continuance of the policy. In the latter case its attitude may be inconsistent with any other theory than that it does not consent to such continuation except upon some condition agreed upon. If an insurance company receives a premium conditionally, after a forfeiture of the policy, and retains the same after obtaining knowledge of the nonexistence of facts satisfying the condition, that may constitute such an unqualified recognition of the policy as to evidence a waiver of the forfeiture as a matter of law, or it may not evidence such an intention at all, or there may be conflicting inferences in regard to the matter, presenting an issue of fact to be determined by court or jury, according as parties see fit to submit the controversy for decision. It has been held that a reasonably prompt offer to return a premium conditionally received, upon obtaining knowledge of the nonexistence of a fact essential to the condition, will, as a matter of law, prevent the receipt thereof from resulting in a waiver of a previous forfeiture; and that an unexplained retention of a premium paid after forfeiture, for a long time, with knowledge of all the facts, may, as a matter of law, result in a waiver of the forfeiture. *Miles v. Mut. R. F. L. Asso.* 108 Wis. 421, 84 N. W. 159; *McQuillan v. Mut. R. F. L. Asso.* 112 Wis. 665, 87 N. W. 1069. Such authorities should not be taken to indicate that a premium received on a policy after it has lapsed must under all circumstances be returned before the assurer can interpose its defense. The evidentiary effect of

the retention of a premium, as regards indicating an intent to waive a forfeiture of a policy upon which it was paid, depends upon circumstances. As before stated, they may indicate such intent as a matter of law, or the contrary as a matter of law, or they may be such as to warrant a determination in regard to the matter either way. The circumstances of this case seem to come far short of showing any such intention. Knowledge of the falsity of the health certificate was not brought incontestably home to appellant until the proof of the claim on the policy was furnished. Within the time allowed for payment of the claim by the terms of the policy, and in the first communication in regard to the matter, from appellant to respondent, he was informed that it would insist that the policy was not in fact restored after the lapse on April 10, 1899, because of the false representations contained in the application for a renewal thereof. A few days thereafter appellant tendered the amount of the premium to the person through whom the money was received. True, the tender was not made to the proper person, but it has evidentiary significance as bearing on the question of whether the retention of the money was with the intention of waiving the forfeiture. When sued upon the policy, appellant acknowledged liability to return the premium. True, the allegation as to the premium having been paid into court for the benefit of respondent was false, still the unqualified acknowledgment of liability to return it remains. Taking all the circumstances together, we fail to see anything indicating a purpose on appellant's part to keep the premium as its own. Without such an intention, the mere retention of the money does not indicate intention to waive the forfeiture, since there is no element of estoppel involved. It has often been held that the mere retention of a premium paid to an insurance company upon a policy after forfeiture thereof, where the circumstances do not indicate an intent to appropriate the money to its own use as its own property, but do indicate a

willingness to account therefor as the property of the policy holder, even though the money be retained down to the final termination of the litigation in respect to the validity of the policy, does not prevent the company from prevailing upon the plea of forfeiture. *Rockwell v. Mutual L. Ins. Co.* 21 Wis. 548; *Harris v. Equitable L. Ass. Soc.* 6 Thomp. & C. (N. Y.) 108; *S. C.* 64 N. Y. 196; *Lewis v. Phœnix M. L. Ins. Co.* 44 Conn. 72. The retention of the money under such circumstances does not establish intention to waive a forfeiture, nor does the doctrine of restitution and rescission, as a condition precedent to the right to insist upon the forfeiture as a defense to an action upon the policy, apply. In this case rescission, strictly so called, was not necessary to appellant's defense, first, because the policy, by the very terms of the conditional revival thereof, was never in fact restored by the payment of the premium; second, because the equitable element of restoration and rescission was sufficiently complied with by appellant's willingness to account for the premium in the action, since it had constantly disclaimed ownership thereof and respondent's attitude was all the time such as to indicate that a tender would be useless. In *Lewis v. Phœnix M. L. Ins. Co., supra,* the following language was used: "If, with full knowledge of that fact [the cause of forfeiture], they accepted this premium, they would be bound by it. But if, as is probable, they first knew of it after a claim was made upon them for the sum insured, then the retention of the money while investigating the case, and pending litigation, could not be regarded as any evidence of a waiver or as constituting an estoppel." In *Rockwell v. Mutual L. Ins. Co., supra,* there was a conditional revival of the policy as in this case. The money paid to the company was retained by it with knowledge of the facts for a period of about ten months. The point was made that such circumstance waived the forfeiture, but the court does not appear to have considered the mere retention of the money as indicating a waiver.

In *Harris v. Equitable L. Ass. Soc., supra,* the court held, in
·effect, that in the absence of circumstances indicating an in-
tention on the part of the insurance company to claim the
money paid upon the policy after it was forfeited, as its own,
after it obtained knowledge of the facts rendering the policy
invalid, it was not precluded from prevailing on the plea of
forfeiture; and that the plaintiff had no reason to complain
because of the mere retention of the money, so long as the
·company showed willingness to account therefor in the action.

Our conclusions on that branch of the case last discussed
are: (1) That, the condition upon which the premium was
received having failed, the policy was not revived pursuant to
the application therefor; (2) that the mere retention of the
money paid to satisfy the past-due premium, in view of the
undisputed evidence showing that appellant never intended
to appropriate the same to its own use, does not indicate an in-
tention to waive the forfeiture; (3) that, the policy having
been revived conditionally, the failure of the condition *ipso
facto* restored the former situation, the same as if it had never
been disturbed, no act on the part of appellant as regards a re-
turn of the premium being necessary; (4) that the situation
·existing before the payment of the premium having been re-
stored by failure of the condition upon which the revival of
the policy depended, the doctrine of rescission and restoration
·does not apply to the case; (5) that the mere retention of the
premium after obtaining knowledge of the facts, down to a
·time subsequent to the commencement of the action, coupled
with a manifest purpose from first to last to account therefor
to the owner of the policy whenever he would receive the
·same, especially in view of the attitude of the latter indicat-
ing that he would not accept a return of the premium in
advance of an adjudication of his rights, does not tend to
·show, much less show, an intention to waive the forfeiture.

The offer to return the premium, contained in the answer,
·we look upon as an unqualified admission of liability to

plaintiff for the amount thereof. In view of the fact that the money was not actually paid into court, the case stands substantially the same in that regard as *Harris v. Equitable L. Ass. Soc.* 6 Thomp. & C. 108, where there was an offer of judgment in the answer for the amount of the premium, and it was held, inferentially, that a judgment accordingly might have been rendered and that such a judgment would have left plaintiff no reason to complain. We think that, there being an admission of liability, with no offer of judgment or payment of money into court in lieu thereof, respondent should have had judgment for the amount offered, with costs. The judgment should, therefore, be reversed and remanded with directions to render judgment in respondent's favor for $39.35 and interest thereon at the rate of six per cent. per annum from the date of the trial, and for costs.

*By the Court.*— So ordered.