ESTATE OF ROSS: SCOTT and others, Appellants, vs. ROSS, Respondent.

*May 5—June 5, 1923.*

*Wills: Vested or contingent remainders: Construction by county court: Erroneous judgment: Waiver of right to question.*

1. Where a testator devised his real and personal property to his wife for life, and after her decease to his then living children equally, the children took no vested interest, but an interest contingent during the widow's life, liable to be defeated by death prior to her death.
2. Title to real estate passes by the will, when duly recorded, and not by decree of the court.
3. County courts have power to construe wills so far as is necessary to determine to whom assignment of real estate is to be made.
4. Although an estoppel involves the element that some one has been misled to his prejudice and concerns the action of more than one person, this is not necessarily true as to waiver; and while there is no waiver unless there is the intentional relinquishment of a known right, the knowledge and intention may be proved by the acts and conduct of the party or by non-action, as well as by express agreement.
5. The county court, on petition of the widow, erroneously assigned the residue of the estate to the children, each taking a vested estate, subject to the life estate of the widow, the will contemplating contingent estates to the children; nevertheless the failure of the children to question such judgment for more than twenty years, being inconsistent with a present claim that their interest was contingent, amounted to a waiver of their present claim.

APPEAL from a judgment of the county court of Green county: JOHN L. SHERRON, Judge. *Affirmed.*

Petition by the bondsman of a deceased trustee for a settlement of the trustee's account and for assignment of the residue of the estate to the persons entitled thereto. The report of the bondsman shows that Sarah A. Ross, the trustee, died on February 24, 1922, and that at the time of her death she had in her possession as trustee $1,622 derived from the sale of real estate of the David B. Ross estate.

Estate of Ross, 181 Wis. 125.

David B. Ross died on September 27, 1897.  The terms of his will, so far, as material to the case, are as follows:

"I give and bequeath unto my beloved wife, Sarah A. Ross, my homestead known and described as follows: . . . I also give and bequeath unto my beloved wife, Sarah A. Ross, all my personal property and effects, including money, notes, accounts, or any other property so-called personal property, . . . to have and to hold and use for her own benefit for the full term of her life.

"After the decease of my beloved wife, Sarah A. Ross, all the property real and personal, after all just debts are satisfied, shall be equally divided between my children, *Linda C. Ross,* now *Scott, Percy H. Ross,* Irvie D. Ross, *Myrtie E. Ross,* now *Root,* and *Luta M. Ross,* if they be living; if not, to go to their children if they have any living; but if any should have no child or children living, to be equally divided between the remaining children of Mr. and Mrs. David B. Ross or their children."

In December, 1898, Sarah A. Ross, executrix, filed a petition in which she set out that she had administered the estate of the deceased and had paid all debts and expenses; that all of said estate was willed to the executrix as his widow surviving, in trust for her sole use and benefit; that she presented her accounts for adjustment; and prayed judgment adjusting and allowing the same and that the residue of said estate be by the judgment or order of the court assigned to the persons who are by law entitled to the same and adjudging the estate to be duly administered and settled.

On December 12, 1898, the court ordered that the petition be heard on February 7, 1899, and ordered further that notice to all persons interested be given by publication in the Journal Gazette.  The published notice, omitting formal parts, stated:

"The following matter will be heard and considered:
"In the adjustment and settlement of the testatrix's final account."

On February 14, 1899, the court filed a final judgment

which recited that Sarah A. Ross, executrix of the estate of David B. Ross, had filed her final account as such executrix, and a petition praying for a judgment allowing her accounts and assigning the residue of said estate to the persons entitled thereto; that an order had been made by the court that said accounts be adjusted and the matters of said petition be decided; that notice thereof be given by publication; that it appeared that due notice had been given by publication as required by law; and that all claims had been duly allowed or disallowed. The judgment proceeded as follows:

"It is further found and determined that in and by the last will and testament of said deceased, David B. Ross, the following described real estate was devised to the following named children, to wit: *Linda C. Ross,* now *Scott, Percy H. Ross,* Irvie D. Ross, *Myrtie E. Ross,* now *Root,* and *Luta M. Ross,* which real estate is subject to the life use of Sarah A. Ross, his widow, and that each of the heirs at law have an undivided one-fifth interest therein, which real estate is described as follows: . . ."

Subsequent to this final order Irvie D. Ross died, leaving him surviving his widow and minor son, Duane Ross.

On March 5, 1907, the four daughters conveyed their interest in the real estate in question to their mother, the executrix. The court appointed a guardian for Duane Ross, and on March 12, 1907, the guardian, by order of the court, conveyed the interest of Duane Ross to Fred Albertson for the sum of $1,622.07. On the same date Sarah A. Ross conveyed by deed the four-fifths interest which she had acquired from the daughters to Fred Albertson. There was a recital in the deed that "The said first party hereby also conveys her life interest in the undivided one-fifth interest in the above 100 acres belonging to Duane Ross, a minor." Sarah A. Ross was appointed guardian of Duane Ross and she took possession of the $1,622.07 above mentioned.

On May 22, 1921, Duane Ross died leaving surviving him his mother. On February 14, 1922, Sarah A. Ross died.

Estate of Ross, 181 Wis. 125.

Upon the petition of O. A. Scott, bondsman of the trustee, for a settlement of the trustee's account, the surviving daughters of David B. Ross filed a petition setting out the foregoing, and prayed:

'    "The order of this court that the said will be construed to the end and effect that at the death of Sarah A. Ross the only persons to survive her coming within the language and terms of the will were your petitioners, and that an order be entered directing said $1,622 to be distributed between your petitioners, share and share alike; or for such other or further order as may be just."

*Nettie Ross,* mother of Duane Ross, filed a petition setting out the facts as above stated and alleged that by order of the county court on February 14, 1899, it was determined that Irvie Ross (her then husband) was entitled to a one-fifth interest in the lands of David B. Ross, subject to a life estate of Sarah Ross; that Irvie Ross died and his son Duane Ross obtained title to the one-fifth interest by the law of descent; that a trust estate was created by the court out of the proceeds of the sale of this one-fifth interest; that Duane Ross died and left surviving him his mother as his sole heir at law; and that Sarah A. Ross died in February, 1922, thereby terminating the trust. Judgment was asked assigning the trust fund to the petitioner, *Nettie Ross.*

As conclusions of law the court found:

"That although the will of the testator seems to contemplate a contingent instead of a vested interest in the children during the lifetime of the surviving widow, liable to be defeated by death before the death of the testator's widow, the court, at the time of the rendition of the final judgment, had jurisdiction of the parties and of the subject matter, and the determination and assignment of the estate as a vested interest to the children who were then living is binding and conclusive on this court until reversed or set aside in the manner provided by law.

"That to now refuse to give full force and effect to the final judgment in this estate would prejudice the rights and interests of innocent subsequent purchasers.

"That by reason of the long delay after notice of the terms of said judgment and the conveyance of a vested interest in fee by said four daughters of four-fifths part of the premises by deed in 1907 and the subsequent conveyances of said premises to innocent purchasers, they are now estopped to question the validity of said judgment.

"That *Nettie Ross,* the mother and sole heir at law of Duane Ross, deceased, is entitled to have the trust fund of $1,622 and the interest thereon from March 1, 1922, assigned either to her or to the estate of Duane Ross, deceased."

Judgment was entered accordingly.

For the appellants the cause was submitted on the brief of *J. D. Dunwiddie* of Monroe, attorney, and *Gilbert, Ela, Heilman & Raeder* of Madison, of counsel.

*J. M. Becker* of Monroe, for the respondent.

JONES, J.  It is argued by counsel for appellants, and it seems to be conceded by counsel for respondent, that the judgment of the county court rendered February 14, 1899, was erroneous.

The judgment assigned the remainder as being vested in the children then living instead of being contingent during the life of the surviving widow, liable to be defeated by death prior to her death.  In this respect the case is ruled by *Cashman v. Ross,* 155 Wis. 558, 145 N. W. 199, where it was said (p. 560):

"The devise in the instant case meets the conditions of this language. .It is not a present devise to the children. It is a direction that after the termination of the life estate the property shall be divided between them, and nothing appears in the will to indicate that any vesting of interest shall precede the right to the enjoyment of the estate.

"When property under a will is to be divided at a specified time in the future among a class, only those thereof who are alive at the time of division can take under the will in the absence of provisions to the contrary.  (Citing cases.)  We have no provisions in this will disposing of the share of a

remainderman who dies before the life tenant. The devise, therefore, to Margaret Ross lapsed upon her death prior to that of her mother, and her share went to the other children of the testator who survived and not to her husband."

It is also well settled that title to real estate passes by the will when duly probated and not by decree of the court. *Will of Hess,* 97 Wis. 244, 72 N. W. 638; *Jones v. Roberts,* 84 Wis. 465, 54 N. W. 917.

The court had jurisdiction to entertain the proceedings for the administration of the estate and to admit the will to probate. The petition for settlement of the account of the executrix and assignment of the residue was in due form, as well as the order for the hearing of the petition. But the published notice made no mention of a construction of the will or the assignment of the residue.

This defective notice is vigorously attacked by counsel for appellants, and it is argued by them that the judgment, so far as it purported to assign interests in real estate, was absolutely void as to them, and that the court was without jurisdiction to construe the will or to make an order assigning the estate. It is contended that since appellants did not appear at the hearing when the judgment was rendered they are in no way bound by it; that there never had been any judgment construing the will, and that it may be now construed.

As to the want of jurisdiction they rely on *Bresee v. Stiles,* 22 Wis. 120; *Ruth v. Oberbrunner,* 40 Wis. 238; and *Jones v. Roberts,* 84 Wis. 465, 54 N. W. 917. It is doubtless true, as claimed by counsel for respondent, that county courts have the power to construe wills so far as is necessary to determine to whom assignment of real estate is to be made. Respondent's counsel argues that it was the duty of the county court to construe the will for this purpose, and that the fact that judicial error was committed is immaterial because the judgment still remains in full force, and that the judgment was not void but only voidable. It is further

Estate of Ross, 181 Wis. 125.

argued that the judgment cannot be collaterally attacked; that this proceeding is a collateral attack; and that the appellants are estopped from claiming the relief sought.

On their contention that the judgment assigning the estate was utterly void appellants' counsel greatly rely on *Ruth v. Oberbrunner, supra.* In that case as here the claim was made that a judgment of distribution by the county court cannot be collaterally attacked. In the decision there was considerable discussion of the jurisdiction of county courts, and among other things the court said (p. 269):

"The question whether the judgment assigning the property, when regularly made, upon proper notice to all concerned, is binding and conclusive upon all the parties in interest until reversed, is very important, and will be left undecided in this case. Should it again arise, it will be treated as an open question. The proofs show that the plaintiffs resided in Germany; and the court found that no notice, either actual or constructive, was ever served upon them or either of them, of the proceeding for the distribution or assignment of the estate, prior to the time of the making of the order. We fully agree with the circuit court that such a notice was essential, and that the want of it deprived the probate court of jurisdiction to enter an order or judgment assigning the estate to the defendants, which would affect the rights of the plaintiffs. Failure to give the notice was not an irregularity or error merely, but it went to the jurisdiction of the court. It is a fundamental principle in the administration of justice that no one shall be deprived of his property without his day in court and having an opportunity to be heard. This principle is not always observed in the enactment of statutes, but it should ever be insisted upon and maintained, unless by express words or strong implication the legislature dispenses with the necessity of giving notice to a party before his rights are adjudicated."

This case has never been overruled, and although in several later decisions the question of the conclusiveness of the judgments of county courts in distributing estates under wills, even where due notice has been given, has been re-

ferred to, the exact point there raised has never been determined. *Williams v. Williams,* 135 Wis. 60, 115 N. W. 342; *Jones v. Roberts,* 84 Wis. 465, 54 N. W. 917; *Will of Hess,* 97 Wis. 244, 72 N. W. 638.

In *Ruth v. Oberbrunner, supra,* the interested parties resided in Germany and had no notice, actual or constructive, of the proceeding. In the present case the trial court found that although the published notice was defective in form:

"Ever since the rendition of said final judgment, all of the interested parties in the estate had actual notice of and acquiesced in the terms of said judgment assigning to the children, then living, a vested interest of a one-fifth part to each of them, subject to the life use to the surviving widow of the testator."

The deed of the four appellants conveyed their four-fifths interest in the land and all their interest in possession or expectancy. The petition for the sale of the interest of the minor stated that his interest was vested; that the owners of the other four-fifths interest and the widow desired to sell their interests in the land. All the deeds by which the respective interests were finally conveyed to the purchaser, Albertson, including that of the appellants, were executed within a few days of each other and formed substantially one transaction. If the parties interested had found a purchaser willing to buy the mere contingent interests of the appellants, it would evidently have been for a diminished price, and it may be doubtful whether any such purchaser could have been found. In order to convey a satisfactory title it would probably have been necessary to proceed under sec. 3519c, Stats., and sections following, and the whole purchase price would have been placed in trust until the termination of the life estate.

For more than twenty years and until the commencement of this proceeding appellants never questioned in any manner the validity of the judgment of the county court. For

nearly fifteen years they have held the proceeds of their sale of the land as a vested estate and had the benefit of the interest or increase from such proceeds which they could not have received from the sale of their interests in the land if treated as contingent interests.

In the conclusions of law the trial court held that to now refuse to give full force and effect to the final judgment would prejudice the rights and interests of innocent subsequent purchasers, and that by reason of the long delay after notice of the terms of the judgment and the conveyance of a vested interest in fee by the appellants, and subsequent conveyances of the premises to innocent parties, appellants are estopped from questioning the validity of the judgment. If the controversy were between the appellants and innocent purchasers whose title was in question there would seem to exist every element of estoppel. But subsequent purchasers are not parties to this suit and it does not appear that their title has been questioned. Nor is it apparent that the respondent claiming this fund has suffered any loss or detriment by reason of the conduct of appellants relied on as creating an estoppel.

It is also claimed by respondent's counsel that by long acquiescence in the judgment, by acting under it as if it were valid, and by profiting from such conduct, the appellants have waived their right to claim the fund in question. Estoppel and waiver are closely allied, and although facts constituting an estoppel are often sufficient to create the defense of waiver, there may be facts affording the defense of waiver but insufficient to create an estoppel. Although an estoppel involves the element that some one has been misled to his prejudice, and involves the action of more than one person, this is not necessarily true as to waiver. *Metcalf v. Phenix Ins. Co.* 21 R. I. 307, 43 Atl. 541; *Washburn v. Union Cent. L. Ins. Co.* 143 Ala. 485, 38 South. 1011; *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563.

The principle on which waiver rests was thus stated in an opinion of this court by Mr. Justice MARSHALL:

"It would seem that the more satisfactory ground on which to support the doctrine of waiver is that it is a rule of judicial policy, the legal outgrowth of judicial abhorrence, so to speak, of a person's taking inconsistent positions and gaining advantages thereby through the aid of courts,—a rule by which, regardless of absence of any element of estoppel or consideration as those terms are popularly understood, the maxim that one shall not be permitted to blow hot, then with advantage to himself turn and blow cold, within limits sanctioned by long experience as required for the due administration of justice, has been prohibitively applied. It is applied where one with knowledge of the facts voluntarily pays a demand upon him. It is applied when one with knowledge, or reasonable means of knowledge, of the facts having two inconsistent remedies chooses one of them. It is applied where one without objection and with such knowledge, or means of knowledge, receives property in consummation of an executory contract. The tendency of courts is to consider as within one of the exceptional classes any situation which is within the principle of it, both as regards the mere fact of waiver and the importance in the administration of justice of holding the waivee to the position he voluntarily and with knowledge of the facts has elected to take." *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 116, 105 N. W. 563.

A learned writer thus stated the rule as to the doctrine:

"Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward." Bishop, Contracts (2d enl. ed.) § 792.

Although it is the general rule that there is no waiver unless there is the intentional relinquishment of a known right, yet the knowledge and intention may be proven by the acts and conduct of the party, or by non-action, as well

as by express agreement. *Stewart v. Leonard,* 103 Me. 128, 68 Atl. 638; *Kiernan v. Dutchess Co. Mut. Ins. Co.* 150 N. Y. 190, 44 N. E. 698; *Hurley v. Farnsworth,* 107 Me. 306, 78 Atl. 291; *Burnham v. Austin,* 105 Me. 196, 73 Atl. 1089.

"Conduct indicating a waiver may be so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary. Then the intent to waive appears as a matter of law." *Frazer v. Ætna L. Ins. Co.* 114 Wis. 510, 523, 524, 90 N. W. 476.

After the judgment of which appellants had notice they had the right to apply to the county court to have it corrected if they chose to do so. The rule is very liberal in respect to such proceedings. Sec. 4046, Stats.; *Estate of Leavens,* 65 Wis. 440, 27 N. W. 324; *In re Fisher,* 15 Wis. 511; *Brook v. Chappell,* 34 Wis. 405. Appellants chose to adopt a contrary course, and during the long period which elapsed they elected to stand upon the judgment as rendered and to reap the benefits already pointed out. Their long acquiescence in the judgment and their conduct for many years have been so inconsistent with their present claims that we are persuaded that whatever right they might otherwise have had to this fund has been waived.

This makes it unnecessary to discuss or decide numerous other questions which have been argued and referred to in this opinion.

*By the Court.*—Judgment affirmed.