Denice BRUNTON,
Plaintiff-Appellant,

v.

NUVELL CREDIT CORPORATION,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2007AP1253. Oral argument October 13, 2009.
—Decided June 24, 2010.*

2010 WI 50

(Also reported in 785 N.W.2d 302.)

135

For the defendant-respondent-petitioner there were briefs by *Walter R. Stewart, Ethan T. Miller,* and *W.R.*

*Stewart & Associates, S.C.,* Madison, and oral argument by *Ethan T. Miller* and *Walter R. Stewart.*

For the plaintiff-appellant there was a brief by *Ivan J. Hannibal, P. Jeffrey Archibald,* and *Archibald Consumer Law Office,* Madison, and oral argument by *Ivan J. Hannibal.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] reversing the circuit court's decision,[2] which granted summary judgment in favor of Nuvell Credit Corporation (Nuvell) and dismissed plaintiff Denice Brunton's (Brunton) action. The dispositive issue in this case is whether under Wis. Stat. § 421.401(2) (2007–08)[3] Nuvell "appear[ed] and waive[d] the improper venue" such that dismissal of the action, which arose out of a consumer credit transaction, was not required. We conclude that appearance and waiver under § 421.401(2) require two actions: (1) an appearance established by conduct recognized under the law as appearance and (2) waiver established by the defendant's knowledge of the proper venue and the intentional relinquishment of the right to proper venue. Nuvell appeared by responsive pleading, court appearances and litigating its defenses. However, neither Nuvell's failure to raise the improper venue in its answer nor its other appearances in this action constituted an intentional relinquishment of the right to proper venue. Because Nuvell did not both appear and waive the improper venue, the circuit court

[1] *Brunton v. Nuvell Credit Corp.,* 2009 WI App 3, 316 Wis. 2d 313, 762 N.W.2d 685.

[2] The Honorable Stuart A. Schwartz of Dane County presided.

[3] All further references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

was required to dismiss the action when Nuvell raised the venue defect. *See* § 421.401(2)(b). Accordingly, we reverse the decision of the court of appeals.

## I. BACKGROUND

¶ 2. On June 13, 2003, Brunton, a resident of Rock County, Wisconsin, bought a new car from Hesser Oldsmobile, Inc. (Hesser) a Rock County dealership. On June 26, 2003, Brunton and Hesser entered into a 72–month installment sale contract. Nuvell subsequently purchased Brunton's installment sale contract from Hesser.

¶ 3. Brunton failed to make payments on the installment sale contract in August, September, October and November 2005. Nuvell initiated debt collection activities against Brunton in November 2005.

¶ 4. On December 16, 2005, Brunton filed suit against Nuvell in Dane County Circuit Court, alleging that Nuvell violated the Wisconsin Consumer Act by engaging in debt collection practices prohibited by Wis. Stat. § 427.104. It is undisputed that this action arose out of a "consumer credit transaction" as defined in Wis. Stat. § 421.301(10).[4] On February 2, 2006, Nuvell first appeared in the action and filed its answer, denying the

---

[4] Wisconsin Stat. § 421.301(10) states:

"Consumer credit transaction" means a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an openend credit plan or is a transaction involving other than openend credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to openend credit plans.

allegations in Brunton's complaint. Over the next 14 months, the parties litigated the case in Dane County.[5]

¶ 5. On May 23, 2006, in the midst of litigating the prohibited debt collection practices suit, Nuvell commenced a replevin action against Brunton in Rock County Circuit Court. Although the parties dispute the exact words that were exchanged, it is undisputed that at an August 9, 2006 scheduling conference in the Rock County action, Brunton's lawyer recognized that filing Brunton's action in Dane County instead of Rock County was problematic under Wis. Stat. § 421.401(2)(b) and raised this issue to Nuvell's counsel. Brunton requested that Nuvell stipulate to transferring venue to Rock County, rather than her dismissing the Dane County action and re-filing in Rock County. Nuvell refused to so stipulate, and Brunton did not take any further action regarding venue.

¶ 6. On February 27, 2007, Nuvell moved for summary judgment dismissing Brunton's suit because Brunton's action arose out of a consumer credit transaction, which required venue in Rock County not in Dane County. Pursuant to Wis. Stat. § 421.401(2)(b), Nuvell argued that Brunton's action must be dismissed

---

[5] The litigation proceeded as follows: February 21, 2006, Nuvell deposed Brunton and responded to Brunton's first discovery request. April 25, 2006, Brunton deposed Nuvell's corporate designee. May 9, 2006, Brunton deposed Nuvell employee, Joe Willis. July 13, 2006, both parties appeared for a scheduling conference at the Dane County Circuit Court. October 9, 2006, both parties appeared for a second scheduling conference. October 11, 2006, the circuit court issued an order setting a date for trial. November 3, 2006, Brunton named its expert witnesses. November 20, 2006, Nuvell moved to modify the pretrial order. February 8, 2007, Brunton served Nuvell with a second discovery request. February 14, 2007, Nuvell served Brunton with its first discovery request.

due to improper venue. Brunton contended that the action should not be dismissed because Nuvell appeared and waived the improper Dane County venue.

¶ 7. The circuit court granted Nuvell's motion for summary judgment. It concluded, relying on *Kett v. Cnty. Credit Plan, Inc.*, 228 Wis. 2d 1, 596 N.W.2d 786 (1999), and *Village of Trempealeau v. Mikrut*, 2004 WI 79, 273 Wis. 2d 76, 681 N.W.2d 190, that improper venue is a "jurisdictional" defect that cannot be waived and therefore whether Nuvell timely objected to the improper venue was irrelevant.

¶ 8. The court of appeals reversed the circuit court's judgment and remanded for further proceedings, holding that by actively defending against Brunton's action for more than one year prior to moving to dismiss based on improper venue, Nuvell "appear[ed] and waive[d] the improper venue" within the meaning of Wis. Stat. § 421.401(2).

¶ 9. We granted review and now reverse.

## II. DISCUSSION

### A. Standard of Review

¶ 10. We review summary judgment decisions independently, employing the same methodology as the circuit court. *Blunt v. Medtronic, Inc.*, 2009 WI 16, ¶ 13, 315 Wis. 2d 612, 760 N.W.2d 396 (citing *Acuity v. Bagadia*, 2008 WI 62, ¶ 12, 310 Wis. 2d 197, 750 N.W.2d 817). Resolution of the question presented herein requires us to interpret and apply Wis. Stat. § 421.401(2). " 'The interpretation and application of a statute to an undisputed set of facts are questions of law that we review independently.' " *Estate of Genrich v.*

*OHIC Ins. Co.,* 2009 WI 67, ¶ 10, 318 Wis. 2d 553, 769 N.W.2d 481 (quoting *McNeil v. Hansen,* 2007 WI 56, ¶ 7, 300 Wis. 2d 358, 731 N.W.2d 273).

## B. The Parties' Positions

¶ 11. The parties offer competing interpretations of Wis. Stat. § 421.401(2). Before examining the language of the statute, it is instructive to summarize each party's arguments.

### 1. Brunton's position

¶ 12. Brunton argues that Wis. Stat. §§ 801.50 and 801.51, the general venue statutes, apply here instead of Wis. Stat. § 421.401(2). Section 801.51 permits any party to challenge venue on the grounds of noncompliance with § 801.50 "or any other statute designating proper venue." Brunton contends that this language incorporates § 421.401, the Wisconsin Consumer Act's venue statute. Section 801.51(1) requires a party to file a motion for a change of venue "[a]t or before the time the party serves his or her first motion or responsive pleading in the action." Accordingly, Brunton argues that Nuvell waived its challenge to venue because Nuvell's answer—its first responsive pleading—failed to raise the issue of improper venue.

¶ 13. Alternatively, Brunton argues that even if Wis. Stat. § 801.51 does not apply, Wis. Stat. § 421.401(2) permits waiver of the improper venue. She contends we must construe waiver under § 421.401(2) as an implied waiver. Under Brunton's implied waiver argument, the improper venue is waived unless a defendant raises an objection to improper venue at the outset of litigation (i.e., in a party's first motion or

responsive pleading). Because Nuvell failed to timely raise an objection to improper venue, Brunton argues Nuvell waived the improper venue.[6]

### 2. Nuvell's position

¶ 14. Relying on *Kett*, Nuvell argues that it did not appear and waive the improper venue because Wis. Stat. § 421.401(2) requires an express waiver, and it did not expressly waive improper venue. Nuvell contends that requiring an express waiver properly puts the onus on plaintiffs to file in the proper county instead of requiring defendants to cure improper venue by raising an objection at the outset of litigation.

¶ 15. Nuvell further argues that an implied waiver is insufficient to constitute waiver under Wis. Stat. § 421.401(2) in light of the Wisconsin Consumer Act's purpose, which is to protect consumers. Nuvell notes that consumers will ordinarily be defendants in actions arising from consumer credit transactions. Accordingly, an express waiver is necessary to protect consumer defendants from inadvertently waiving improper venue by failing to object to improper venue in the first responsive pleading.

### C. General Principles of Statutory Interpretation

¶ 16. Interpretation of a statute requires us to determine what the statute means. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271

---

[6] Brunton also raises an argument that Nuvell is equitably estopped from asserting its venue challenge. "Because the argument is undeveloped and [Brunton] fails to cite to any authority in support of [her] position, we decline to address this argument." *See McEvoy v. Grp. Health Coop. of Eau Claire*, 213 Wis. 2d 507, 530 n.8, 570 N.W.2d 397 (1997).

Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *Id.*, ¶ 45 (quoting *Seider v. O'Connell*, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). Statutory language is read to give effect to every word, to avoid surplusage and to avoid absurd results. *Id.*, ¶ 46. Further, statutory language is given its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶ 45. Plain meaning may be ascertained not only from the words employed in the statute, but also from the context in which the words are used. *Id.*, ¶ 46.

¶ 17. In construing a statute, we favor a construction that fulfills the purpose of the statute over one that undermines the purpose. *Cnty. of Dane v. LIRC*, 2009 WI 9, ¶ 34, 315 Wis. 2d 293, 759 N.W.2d 571. "[A] plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." *Kalal*, 271 Wis. 2d 633, ¶ 49. While extrinsic sources are usually not consulted if the statutory meaning is plain, legislative history may be consulted "to confirm or verify a plain-meaning interpretation." *Id.*, ¶ 51.

D. Wisconsin Stat. §§ 801.50 and 801.51

¶ 18. Brunton urges us to apply Wis. Stat. §§ 801.50 and 801.51, the general venue statutes, because she contends they apply to all venue challenges. We disagree. Section 801.50 establishes venue generally in civil actions "[e]xcept as otherwise provided by statute." § 801.50(2). Section 801.51 provides that challenges to improper venue "on the grounds of noncom-

146

pliance with s. 801.50 or any other statute" be made "[a]t or before the time the party serves his or her first motion or responsive pleading in the action."

¶ 19. We have previously decided that Wis. Stat. § 421.401 is a "legislatively crafted exception to the general venue provision." *Kett,* 228 Wis. 2d 1, ¶ 20. That § 421.401 is a legislative exception to the more general venue provisions is confirmed by § 801.50(5m), which provides:

> Venue of an action arising from a consumer credit transaction, as defined in s. 421.301(10), shall be in any county specified in s. 421.401(1).

¶ 20. Furthermore, a "canon of statutory construction provide[s] that where a general statute and a specific statute apply to the same subject, the specific statute controls." *Rouse v. Theda Clark Med. Ctr., Inc.,* 2007 WI 87, ¶ 37, 302 Wis. 2d 358, 735 N.W.2d 30. Wisconsin Stat. §§ 801.50, 801.51 and 421.401 all apply to the same subject—venue. Sections 801.50 and 801.51 generally govern venue and challenges to improper venue in civil actions. In contrast, § 421.401 establishes venue for only two types of civil actions: consumer transactions and consumer credit transactions. § 421.401(1). Accordingly, § 421.401 is the more specific statute governing venue, and we conclude that it controls here.

¶ 21. We further conclude that applying Wis. Stat. §§ 801.50 and 801.51 to venue challenges in actions arising from consumer transactions would produce absurd results. Under § 801.51, a timely motion for change of venue results in a transfer of venue to an appropriate county. In contrast, under Wis. Stat. § 421.401(2)(b), an improperly venued action arising

from a consumer credit transaction must be dismissed, unless the defendant appears and waives the objection. If § 801.51 applies to actions arising from consumer credit transactions, as Brunton contends, we fail to see when § 421.401(2)(b), mandating dismissal of an improperly venued action, would ever apply. Interpreting a statute so that portions of it have no application is an absurd result.

¶ 22. We conclude that Wis. Stat. §§ 801.50 and 801.51, the general venue statutes, do not apply to actions arising from consumer credit transactions. Rather, the venue provision in Wis. Stat. § 421.401 applies.

### E. Wisconsin Consumer Act Transactions

¶ 23. Proper venues for a claim arising out of a consumer credit transaction are: (1) the county where the customer resides or is personally served; (2) the county where collateral securing a consumer credit transaction is located; or (3) the county where the customer acquired the property that is the subject of the transaction or signed the document evidencing his or her obligation under the terms of the transaction. Wis. Stat. § 421.401(1)(a)-(c).

¶ 24. Brunton commenced this action in Dane County. However, proper venue is Rock County because that is where Brunton resides, where Brunton acquired the car, where the car is located and where Brunton signed the installment sale contract. *See* Wis. Stat. § 421.401(1)(a)–(c). Accordingly, the action was improperly venued in Dane County; the parties agree that Brunton should have filed this action in Rock County.

¶ 25. Wisconsin Stat. § 421.401(2) addresses actions arising under the Wisconsin Consumer Act that are improperly venued. Section 421.401(2) states in relevant part:

> When it appears . . . that the county in which the action is pending under sub. (1) is not a proper place of trial for such action, *unless the defendant appears and waives the improper venue,* the court shall act as follows:
>
> (a) Except as provided in par. (b), if it appears that another county would be a proper place of trial, the court shall transfer the action to that county.
>
> (b) If the action arises out of a consumer credit transaction, the court *shall dismiss the action* for lack of jurisdiction.

(Emphasis added.) Accordingly, because Brunton's action arises out of a consumer credit transaction and was improperly venued, the circuit court was required to dismiss her action unless we conclude Nuvell "appear[ed] and waive[d] the improper venue."[7]

### 1. Purpose

¶ 26. When the legislature states the purpose that underlies a statute, we are to interpret the statute in light of that purpose. *Kalal,* 271 Wis. 2d 633, ¶ 49. Wisconsin Stat. § 421.102 identifies the legislative purpose that drives consumer transaction statutes, i.e., Wis. Stat. chs. 421–27. Section 421.102 provides in relevant part:

---

[7] Brunton does not dispute that if Nuvell did not waive its objection to improper venue, the circuit court was required to dismiss her action.

Purposes; rules of construction. (1) Chapters 421 to 427 shall be liberally construed and applied to promote their underlying purposes and policies.

(2) The underlying purposes and policies of chs. 421 to 427 are:

(a) To simplify, clarify and modernize the law governing consumer transactions;

(b) To protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants;

(c) To permit and encourage the development of fair and economically sound consumer practices in consumer transactions; and

(d) To coordinate the regulation of consumer credit transactions with the policies of the federal consumer credit protection act.

At the heart of each of the underlying purposes and policies of the Wisconsin Consumer Act is the protection of customers. Accordingly, we interpret Wis. Stat. § 421.401(2) in light of the stated legislative purpose of protecting customers. *See Kalal,* 271 Wis. 2d 633, ¶ 49. In this regard, paras. (2)(b), (2)(c) and (2)(d) are relevant to our interpretation of § 421.401(2), in accordance with the legislature's stated purpose of protecting customers.

### 2. Wisconsin Stat. § 421.401(2)

¶ 27. The prefatory language of Wis. Stat. § 421.401(2), when combined with para. (2)(b) states that an improperly venued consumer credit action must be dismissed unless the defendant appears *and* waives the improper venue. There is authority for the conclusion that appearing in an action is a distinct requirement. *See Dauphin v. Landrigan,* 187 Wis. 633, 636,

205 N.W. 557 (1925). In *Dauphin,* we explained that "[a]ppearance in the action and pleading in the action are distinct acts. While the filing of an answer may operate as an appearance, appearing and pleading nevertheless remain two distinct things." *Id.*

¶ 28. For the reasons set out below, we also conclude that appearing in an action arising from a consumer credit transaction and waiving an improper venue are two distinct statutory requirements. Both statutory requirements must be fulfilled before an improper venue will be permitted to stand. We so conclude because Wis. Stat. § 421.401(2) joins the terms, "appears" and "waives" with the conjunction "and," thereby establishing two distinct requirements. Further, separating "appears" from "waives" will best protect customers against unfair practices by merchants; will encourage merchants to develop fair consumer practices; and will promote the protection of unsophisticated consumers, which is a policy underlying the federal consumer credit protection act. *See* Wis. Stat. § 421.102(2)(b)-(d). We discuss "appears" and "waives" in turn.

i. Appears

¶ 29. "The term 'appearance' is generally used to signify the overt act by which one against whom a suit has been commenced submits himself to the court's jurisdiction and constitutes the first act of a defendant in court." *McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.,* 23 Wis. 2d 592, 594, 127 N.W.2d 813 (1964) (citing *Dauphin,* 187 Wis. at 636; 4 Am. Jur. 2d *Appearance* § 1 (2009)). "All persons who are parties to an action have a right to appear, either by attorney or in

their own person." 2 *Wis. Pl. & Pr. Forms* § 16:8 (5th ed. 2009) (citing Wis. Const. art. I, § 21(2); SCR 11.02(1)).

¶ 30. There are a number of actions by which one may appear. "A party 'appears' in an action either formally, by serving and filing a notice of appearance or an answer or by making a motion that serves to extend the time to answer, or informally, by actively litigating the merits of an issue without raising any jurisdictional objection." 4 Am. Jur. 2d *Appearance* § 1 (2009). In *City of Fond du Lac v. Kaehne,* the court of appeals concluded that a party proceeding pro se in a civil action who sent a letter to the circuit court "appeared" in the action. 229 Wis. 2d 323, 326, 599 N.W.2d 870 (Ct. App. 1999); *see also L.R.E. v. R.E.J.,* 168 Wis. 2d 209, 216, 483 N.W.2d 588 (Ct. App. 1992) (concluding that pleading to the court, albeit by mail, constituted an appearance).

¶ 31. Because it is relevant to the issue of appearance, we take this opportunity to discuss our decision in *Kett.* First, we note that some of the principles established in *Kett* are applicable here, but we conclude that *Kett*'s ultimate holding is distinguishable. In *Kett,* Community Credit Plan improperly venued its replevin actions in Milwaukee County and obtained default judgments against the defendants. *Kett,* 228 Wis. 2d 1, ¶ 3. Applying Wis. Stat. § 421.401(2), we held that the default judgments were invalid from the time of entry because the actions were commenced in Milwaukee County in violation of § 421.401(1). *Id.,* ¶ 11. *Kett*'s holding is distinguishable because it was not interpreting § 421.401(2) to determine the meaning of "appears and waives the improper venue" as we are here. Instead, in *Kett,* we interpreted the phrase "the court shall dismiss the action for lack of jurisdiction," § 421.401(2)(b), which we explained could mean "personal jurisdiction, subject matter jurisdiction or the competence of a court," *Kett,*

228 Wis. 2d 1, ¶ 21 n.12. Further, *Kett* is not dispositive here because *Kett* involved default judgments. *Id.*, ¶ 12. A default judgment may be entered when a party fails to plead or otherwise appear in an action. *See* Wis. Stat. § 806.02(3). Accordingly, such a defendant necessarily could not have fulfilled the appearance requirement of § 421.401(2). However, a default judgment is not at issue here.

¶ 32. To appear and to waive cannot be found in a single act and also provide the customer protection that the legislature sought to achieve. *See* Wis. Stat. § 421.102(2). For example, if a merchant files an action arising from a consumer credit transaction in an improper venue far from the home of the customer, the customer may write a letter to the judge before whom the action is pending, asking what will occur next. The customer may do so without realizing that venue is improper, without realizing where the action should have been venued and without knowing that he has the right to have the action dismissed due to the improper venue. Were that letter to constitute both an appearance and a waiver, a customer could lose the right to proper venue, together with the right to dismissal of the action, before the customer was aware of those rights.

## ii. Waives

¶ 33. The term, waives or waiver, functions differently in different circumstances.[8] For example, under Wisconsin's rules of civil procedure, certain affirmative defenses are waived unless raised in the first responsive

---

[8] There are 776 Wisconsin statutes that contain some form of the word "waive." Our holding in this case is not intended to define waiver in every such statute as requiring the intentional relinquishment of a known right.

pleading or raised by motion made prior to answering. *See* Wis. Stat. § 802.06(2).[9] This is a statutorily defined waiver. Although we are interpreting a statute, Wis. Stat. § 421.401(2), the legislature has not defined what acts constitute waiver under § 421.401(2).

¶ 34. Waiver has been interpreted under common law in a number of circumstances that have required various showings depending on the context in which the claimed waivers arose. For example, the waiver of a fundamental constitutional right requires a knowing, intelligent and voluntary waiver. *See State v. Klessig*, 211 Wis. 2d 194, 204, 564 N.W.2d 716 (1997) (requiring a knowing, intentional and voluntary waiver of the right to counsel). The *Klessig* standard is a high standard that involves an inquiry by the court before which the potential waiver is occurring to determine whether the parameters of waiver are met. *State v. Weed*, 2003 WI 85, ¶ 39, 263 Wis. 2d 434, 666 N.W.2d 485.

¶ 35. We recently discussed common law waiver in *State v. Ndina*, 2009 WI 21, 315 Wis. 2d 653, 761 N.W.2d 612. There we examined whether Ndina had

---

[9] Wisconsin Stat. § 801.06 is a rule of civil procedure that has language similar to that found in Wis. Stat. § 421.401(2). Section 801.06 states in relevant part:

A court of this state having jurisdiction of the subject matter may, without a summons having been served upon a person, exercise jurisdiction in an action . . . over any person who *appears in the action and waives the defense of lack of jurisdiction* over his or her person as provided in s. 802.06(8).

(Emphasis added.) What constitutes an appearance and waiver under § 801.06, however, is not instructive here because § 801.06 specifically references Wis. Stat. § 802.06(8), which establishes the acts that constitute waiver. The Wisconsin Consumer Act provides no specifics in regard to what constitutes waiver under § 421.401(2).

waived his Sixth Amendment right to a public trial. *Id.*, ¶ 2. In so doing, we explained the distinction between forfeiture and waiver. We noted that "cases sometimes use the words 'forfeiture' and 'waiver' interchangeably[; however,] the two words embody very different legal concepts." *Id.*, ¶ 29. " 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' " *Id.* (quoting *United States v. Olano,* 507 U.S. 725, 733 (1993) (internal quotations and citations omitted)); *see also Rao v. WMA Sec., Inc.,* 2008 WI 73, 102, 310 Wis. 2d 623, 752 N.W.2d 220 (Prosser, J., dissenting) (explaining that 'waiver' is the intentional relinquishment or abandonment of a known right and forfeiture is a failure to timely assert a right); *State v. Kelty,* 2006 WI 101, ¶¶ 62-63, 294 Wis. 2d 62, 716 N.W.2d 886 (Abrahamson, C.J., concurring) (acknowledging the distinction between forfeiture and waiver); *State v. Huebner,* 2000 WI 59, 11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727 (same).[10]

---

[10] *Accord Kontrick v. Ryan,* 540 U.S. 443, 458 n.13 (2004) (Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right[;] waiver is the intentional relinquishment or abandonment of a known right.) (internal quotations and citation omitted); *Freytag v. Comm'r of Internal Revenue,* 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring) (acknowledging the distinction between waiver and forfeiture); *United States v. Park Place Assocs., Ltd.,* 563 F.3d 907, 921 n.10 (9th Cir. 2009) (same); *United States v. Clark,* 535 F.3d 571, 577 (7th Cir. 2008) (same); *Barnett v. Roper,* 541 F.3d 804, 807 n.2 (8th Cir. 2008) (same); *United States v. Carrasco-Salazar,* 494 F.3d 1270, 1272 (10th Cir. 2007) (same).

Many other Wisconsin cases, which have persuasive value, have followed the forfeiture/waiver distinction drawn in *Ndina. See, e.g., Tower Auto. Milwaukee, LLC v. Samphere,* No. 2009AP1043, unpublished slip op., ¶ 25 n.7, (Wis. Ct. App. Feb. 9,

¶ 36. Establishing that a party knew of the right at issue is essential to establishing waiver.

> [I]t must be shown by the party claiming a waiver that the person against whom the waiver is asserted had at the time knowledge . . . of the existence of his rights. . . . Ignorance of a material fact negatives a waiver. Waiver cannot be established by a consent given under a mistake of fact.

*Davies v. J.D. Wilson Co.*, 1 Wis. 2d 443, 467, 85 N.W.2d 459 (1957) (quoting 56 Am. Jur. Waiver § 14). Stated differently, a valid waiver that intentionally relinquishes a right must be done with actual knowledge of the right being waived.

¶ 37. We conclude that waiver under Wis. Stat. § 421.401(2) requires the intentional relinquishment of a known right.[11] The right being waived here is a

2010) ("While the parties and relevant case law use the word 'waiver,' we use the word 'forfeiture' consistent with the terminology adopted by *Ndina,* 315 Wis. 2d 653, 29."); *Obriecht v. Law Offices of Lettenberger Glasbrenner, S.C.,* No. 2008AP3092, unpublished slip op., ¶ 18 n.7 (Wis. Ct. App. July 30, 2009) (noting that relevant precedent used the term waiver but relying on *Ndina* concluded forfeiture was the correct term); *State v. Kaczmarski,* 2009 WI App 117, ¶ 7 n.3, 320 Wis. 2d 811, 772 N.W.2d 702 (noting that the parties' briefs used the terms forfeit and waive interchangeably, but following *Ndina,* the court concluded that forfeit was the more appropriate term); *State v. Miller,* 2009 WI App 111, ¶ 22 n.8, 320 Wis. 2d 724, 772 N.W.2d 188 (noting that the parties use the term waiver to describe the failure to timely raise a defense, but, citing *Ndina,* concluded that forfeiture was the more appropriate term).

[11] Our case law has consistently maintained this definition of waiver. *See Rao v. WMA Sec., Inc.,* 2008 WI 73, ¶ 102, 310

defendant's right to proper venue, coupled with the right of dismissal if the case is not properly venued. *See* Wis. Stat. § 421.401(1)(a)-(c); § 421.401(2)(b). Accordingly, to establish a valid waiver, it must be proved by the party claiming waiver that the defendant knew the place of proper venue and knew that he had the right to dismissal of the case when it was not properly venued.

■■

¶ 38. In addition to knowledge of the place of proper venue and the right to dismissal of an improperly venued action, a plaintiff must also prove that the rights to proper venue and dismissal of an improperly venued action were intentionally relinquished. Intentional relinquishment may be demonstrated by an express statement or by conduct. *Fraser v. Aetna Life Ins. Co.*, 114 Wis. 510, 523–24, 90 N.W. 476 (1902); *see also Estate of Ross v. Ross*, 181 Wis. 125, 134, 194 N.W.

Wis. 2d 623, 752 N.W.2d 220 (Prosser, J., dissenting) (explaining that the technical definition of waiver "is the intentional relinquishment or abandonment of a known right"); *Milas v. Labor Ass'n of Wis.*, 214 Wis. 2d 1, 9–10, 571 N.W.2d 656 (1997) (noting that "[t]his court has defined waiver as the 'voluntary and intentional relinquishment of a known right' ") (quoting *Von Uhl v. Trempealeau Cnty. Mut. Ins. Co.*, 33 Wis. 2d 32, 37, 146 N.W.2d 516 (1966)); *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 128, 403 N.W.2d 747 (1987) (defining waiver as the " 'intentional relinquishment of a known right' ") (quoting *Emp'rs Ins. of Wausau v. Sheedy,* 42 Wis. 2d 161, 166, 166 N.W.2d 220 (1969)); *Bank of Sun Prairie v. Opstein,* 86 Wis. 2d 669, 681, 273 N.W.2d 279 (1979) (same) (citing *Hanz Trucking, Inc. v. Harris Bros. Co.,* 29 Wis. 2d 254, 264, 138 N.W.2d 238 (1965)); *Mansfield v. Smith,* 88 Wis. 2d 575, 592, 277 N.W.2d 740 (1979) (same); *Swedish Am. Nat'l Bank of Minneapolis v. Koebernick,* 136 Wis. 473, 479, 117 N.W. 1020 (1908) (same); *Monroe Water Works Co. v. City of Monroe,* 110 Wis. 11, 22, 85 N.W. 685 (1901) (same).

151 (1923). Intentional relinquishment by conduct occurs when a party's conduct is "so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary." *Fraser,* 114 Wis. at 523–24. Stated differently, a party intentionally relinquishes a known right by affirmative acts unambiguously demonstrating that his conduct is intentionally undertaken and meant to give up the right to proper venue.

¶ 39. Applying these principles here, we conclude that a defendant may waive the improper venue by filing a written stipulation with the court or by oral stipulation made in open court and entered in the record, which demonstrates that the defendant is aware of his right to proper venue and that he intends to relinquish this right rather than having the action dismissed. This establishes waiver by express statement. We further conclude that a defendant may waive the right to proper venue by affirmative acts that unambiguously demonstrate that he knows the place of proper venue, as well as the right to dismissal of the improperly venued action against him, and that he nonetheless intends to relinquish such rights. This establishes waiver by conduct.

¶ 40. Our interpretation of "waives" is supported by the plain meaning of Wis. Stat. § 421.401(2), which sets no time limitation for objections to venue. That is, unlike Wis. Stat. § 801.51, which limits the time during which a defendant may challenge venue thereunder, the Wisconsin Consumer Act's venue provision does not contain a time limit. Moreover, § 421.401(2) states, "[w]hen it appears from the return of service of the summons *or otherwise*" that the venue is improper in an action arising from a consumer credit transaction, the court must dismiss the action unless the defendant

158

appears and waives the defect in venue. (Emphasis added.) This language establishes that the issue of improper venue is to be addressed whenever it is raised by a defendant, not only when it is raised at the outset of litigation. Accordingly, our interpretation correctly places the onus on plaintiffs, typically creditors, to properly venue an action or risk dismissal when the defendant brings the improper venue to the circuit court's attention.

¶ 41. Although the plain meaning of Wis. Stat. § 421.401(2) of the Wisconsin Consumer Act supports our interpretation, we observe that the legislative history of the venue provision governing consumer credit transactions also supports our conclusion that objections to venue need not be made at the initial stage of the litigation. *See Kalal,* 271 Wis. 2d 633, ¶ 51. The legislative history confirms that we properly rejected Brunton's assertion that improper venue is waived if not challenged in a defendant's answer or first responsive pleading. In 1983, the legislature created the specialized venue provisions for actions arising from consumer credit transactions. 1983 Wis. Act 389; *see* Wis. Stat. § 425.501(2) (1983–84). The language of § 425.501(2) explicitly required such venue challenges to be brought at the outset of litigation. It stated:

> When, in any action under this chapter, it appears from the return of service of the summons or otherwise that the county in which the action is pending is not a proper place of trial of such action under this section, the court shall, *on motion of a party or on its own motion, on the return day of the summons or prior to taking any other action on the case, determine the correctness of the venue.* If venue is correct the case shall continue. If venue is not correct, the court shall dismiss the action unless the defendant appears and

waives the improper venue. If the defendant does not appear and waive the improper venue, the court shall lack jurisdiction other than to dismiss the action.

§ 425.501(2) (1983–84) (emphasis added).

¶ 42. Then, in 1987, the legislature consolidated the venue provisions for actions arising from consumer credit transactions and consumer transactions in Wis. Stat. § 421.401(2). *See* 1987 Wis. Act 208. In 1987 Wis. Act 208, the legislature removed a portion of the venue provision; specifically, it removed the language requiring the court to determine whether venue was proper at the outset of the litigation. We note that there have not been any changes to the language of § 421.401(2) since 1987. We conclude that it is reasonable to infer that with removal of the directive to consider venue at the outset of the litigation, the legislature intended that the issue of improper venue in actions arising from consumer credit transactions be considered whenever it is raised.

¶ 43. Additionally, our conclusion that waiver under Wis. Stat. § 421.401(2) may be established by demonstrating a defendant's knowledge of the proper place of venue and the statutory right to dismissal of an action improperly venued and that he unambiguously intends to relinquish those rights furthers the purposes underlying the Wisconsin Consumer Act. *See* Wis. Stat. § 421.102(2)(b)-(c). For example, were we not to require the intentional relinquishment of a known right to proper venue, a merchant could file an action in a locale far distant from a customer's residence, thereby making defense of the action very difficult. The merchant could then ask the customer to agree to the venue by convincing the customer that it is customary to do so, or for some other reason that does not acknowledge the

statutory right to dismissal of an improperly venued action. If a customer did not know the place of proper venue or that he or she could demand dismissal of the action, the customer may sign such an agreement waiving the improper venue to his or her detriment.

¶ 44. Our construction of the term "waives," requiring the intentional relinquishment of the known right to proper venue, coupled with the right to dismissal of the case when venue is improper, will discourage sharp practices by merchants and protect customers, thereby comporting with the legislature's specific instructions. Wis. Stat. § 421.102(2)(b)-(c).

¶ 45. Our construction is also in accordance with the policies underlying a federal consumer credit protection act, policies with which we are instructed to coordinate our interpretations of the Wisconsin Consumer Act. Wis. Stat. § 421.102(2)(d). The Fair Debt Collection Practices Act (FDCPA)[12] is a federal consumer protection act contained in 15 U.S.C. § 1692 *et seq.* (2006).[13] Federal courts have interpreted claims of

[12] Wisconsin Stat. § 421.102(2)(d) directs us to coordinate our interpretations of the Wisconsin Consumer Act "with the policies of the federal consumer credit protection act" without specifically citing to the applicable federal law. We coordinate our interpretation of the Wisconsin Consumer Act with the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (2006). We note that other cases have done so as well. *See Assocs. Fin. Servs. Co. of Wis., Inc. v. Hornik,* 114 Wis. 2d 163, 172–73, 336 N.W.2d 395 (Ct. App. 1983) (interpreting Wis. Stat. § 425.304 to coordinate with a provision of the FDCPA); *Hartman v. Meridian Fin. Servs., Inc.,* 191 F. Supp. 2d 1031, 1050 (W.D. Wis. 2002) (interpreting Wis. Stat. § 427.104(1)(j) to coordinate with a provision of the FDCPA).

[13] While, by its specific terms, the FDCPA, 15 U.S.C. § 1692 *et seq.,* applies only to actions by consumers against debt collectors, § 1692i(b), it has been interpreted such that courts

unfair debt collection practices "through the lens of the 'least sophisticated debtor' or 'least sophisticated consumer' standard.' " *Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir. 1994) (internal quotations omitted). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993). In regard to various levels of sophistication, the United States Supreme Court has opined:

> The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious.

*Fed. Trade Comm'n v. Standard Educ. Soc'y,* 302 U.S. 112, 116 (1937) (quoted in *Clomon,* 988 F.2d at 1318).

¶ 46. In *Gammon,* the United States Court of Appeals for the Seventh Circuit modified the "least sophisticated consumer" standard to the "unsophisticated consumer" to describe "the hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading." *Gammon,* 27 F.3d at 1257. It did so in order to continue to protect unsophisticated consumers while accounting for "unrealistic or peculiar interpretations of collection letters." *Id.* In applying the unsophisticated consumer standard, the Seventh Circuit concluded, "[t]he lan-

are to examine collection practices in a fashion that will curb sharp practices by debt collectors and promote fairness to consumers. *E.g., Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1258 (7th Cir. 1994).

guage in the collection letter [under review] appears to be cleverly drafted in order to insinuate what obviously cannot be stated directly." *Id.* at 1258. In so doing, it focused on the unfairness that was present and was to be eliminated under federal law. *Id.* Our interpretation of the waiver described in Wis. Stat. § 421.401(2) as requiring the intentional relinquishment of the known right to proper venue coupled with the statutory right to dismissal of the case when venue is improper, is consistent with federal policy. This is so because our interpretation will protect unsophisticated consumers by preventing them from inadvertently waiving the right to proper venue and dismissal of an action that is improperly venued.

### 3. Application of Wis. Stat. § 421.401(2)

¶ 47. We have concluded that Wis. Stat. § 421.401(2) requires both appearance and waiver, demonstrating intent to relinquish the known right to proper venue, coupled with the known right to dismissal of the improperly venued action. Accordingly, we apply that standard to Nuvell to determine whether Nuvell appeared and waived the improper venue prior to its motion for summary judgment of dismissal.

¶ 48. There is no dispute that Nuvell appeared in this case. Nuvell first appeared in the action on February 2, 2006, when it filed a notice of appearance and its answer.

¶ 49. We conclude that Nuvell did not expressly waive the improper venue. This is so because there was no written stipulation filed with the court or oral stipulation made in open court on the record stating

that Nuvell intended to waive its right to proper venue. As such, any waiver could have occurred only by conduct.

¶ 50. Brunton contends that Nuvell's continued litigation of this action for over a year constitutes waiver. We disagree. Continued litigation of an action does not *unambiguously* demonstrate an intention to relinquish the right to proper venue. This is so because such conduct may also reasonably be interpreted as Nuvell defending itself against Brunton's lawsuit.[14] *See Kalal,* 271 Wis. 2d 633, ¶ 47 (explaining that to be unambiguous requires being susceptible to only one reasonable interpretation).

¶ 51. Brunton argues that Nuvell had the burden to challenge the improper venue once Nuvell knew of it.[15] We are unpersuaded. There is no dispute that both

---

[14] We note that Brunton argued that interpreting waiver to require the intentional relinquishment of the known right to dismissal of the case would sacrifice judicial economy by permitting a defendant to litigate an action, thereby leaving the door open to dismissal of the action and potential re-filing in the proper county of venue. First, as we stated, the heart of the underlying purpose of Wis. Stat. § 421.102 is the protection of the consumer. *See supra* ¶ 26. This express directive from the legislature overrides any concerns of judicial economy. Second, the statute of limitations in actions filed under the Wisconsin Consumer Act continues to run. This, to some extent, preserves judicial economy. For example, here the parties litigated this case for 14 months prior to dismissal due to improper venue. However, the one year statute of limitations applicable here, *see* Wis. Stat. § 425.307(1), prevents Brunton from re-filing this action in the proper county, thereby avoiding duplicative efforts by the circuit courts.

[15] The action was venued in Dane County for nearly seven months after Brunton informed Nuvell that Dane County was not a proper venue for the action.

parties knew that the action had been improperly filed in Dane County because on August 9, 2006, Brunton's lawyer raised the issue of improper venue with Nuvell at a scheduling conference in the Rock County action. We conclude that it was Brunton who had the responsibility to properly venue her action. Therefore, Nuvell's continued litigation may reasonably be interpreted as defending against the claims asserted in Brunton's lawsuit.

¶ 52. When Nuvell refused to stipulate to Brunton's transfer of the action to Rock County so Brunton could avoid dismissal of the action, it was Brunton who chose to continue to disregard the venue defect of her own making and to risk dismissal of her lawsuit.[16] Nuvell's refusal to stipulate to transferring venue to Rock County does not demonstrate its intention to waive the improper venue; rather, it may reasonably be interpreted as demonstrating Nuvell's intent to stand on its right to proper venue, including the right to have an improperly venued action against it dismissed.

¶ 53. There is nothing in the record that establishes that Nuvell intentionally, by affirmative actions, relinquished its right to proper venue or its statutory

---

[16] Had Brunton dismissed the Dane County action and re-filed the action in Rock County when she raised the venue issue with Nuvell, Brunton would have had about four months to re-file her action in Rock County before the statute of limitations expired. Because Brunton waited for Nuvell to cure the defect she created, the statute of limitations bars her claim. Although this outcome may seem harsh, typically actions arising under consumer credit transactions will be brought by merchants. This statutory interpretation will encourage merchants to use fair credit collection practices and protect consumers, thereby promoting the purposes underlying the Wisconsin Consumer Act. Wis. Stat. § 421.102(2)(b)-(c).

right to dismissal of the improperly venued action. Accordingly, we conclude Nuvell's conduct did not unambiguously demonstrate waiver of the improper venue, and, therefore, the circuit court properly dismissed this action.

## III. CONCLUSION

¶ 54. The dispositive issue in this case is whether under Wis. Stat. § 421.401(2) Nuvell "appear[ed] and waive[d] the improper venue" such that dismissal of the action, which arose out of a consumer credit transaction, was not required. We conclude that appearance and waiver under § 421.401(2) requires two actions: (1) an appearance established by conduct recognized under the law as appearance and (2) waiver established by the defendant's knowledge of the proper venue and the intentional relinquishment of the right to proper venue. Nuvell appeared by responsive pleading, court appearances and litigating its defenses. However, neither Nuvell's failure to raise the improper venue in its answer nor its other appearances in this action constituted an intentional relinquishment of the right to proper venue. Because Nuvell did not both appear and waive the improper venue, the circuit court was required to dismiss the action when Nuvell raised the venue defect. *See* § 421.401(2)(b). Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed and the action is remanded to the circuit court for dismissal.

¶ 55. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). This case is in an unusual posture. In the instant case the consumer is the plaintiff, and the

166

creditor is the defendant. In many, if not in most, consumer credit cases the creditor is the plaintiff, seeking a remedy against a consumer who is the defendant.

¶ 56. The rules adopted in the present case will apply in all cases, regardless of who is the plaintiff or defendant, and any interpretation of the statutes must promote the purposes and policies of the Wisconsin Consumer Act.

¶ 57. I would reverse the decision of the court of appeals and remand the cause to the circuit court to dismiss the action.

¶ 58. I reach this result even though the result seems harsh and at some level offends my sense of fairness. But the result reached is, in my opinion, required by the statute.

¶ 59. The sense of unfairness arises because Nuvell Credit Corporation (the defendant) knew that Brunton (the consumer/plaintiff) had brought the action in the wrong county. Nevertheless, Nuvell Credit continued to litigate the case in Dane County and then shouted, "Gotcha—wrong county!" only after doing so would end the consumer/plaintiff's case. Nuvell Credit actively participated in the litigation in Dane County Circuit Court, including discovery, for more than a year before objecting to venue; while participating in the litigation Nuvell Credit did not advise the circuit court of the defect in venue; then Nuvell Credit sought dismissal of the action only after the statute of limitations had run against the consumer/plaintiff, making it impossible for her to refile the claim in the proper county. Nuvell Credit's conduct seems "tricky" and wasteful of the circuit court's time, and means that the consumer/plaintiff never gets her day in court.

¶ 60. The appearance is that Nuvell Credit unfairly relied on a "technicality" to prevent the consumer/plaintiff forever from getting a determination on the merits of her claim. But the so-called "technicality" is a legislative enactment governing a court's jurisdiction, an enactment binding on the litigants and on the courts. *See Kett v. Cmty. Credit Plan, Inc.*, 228 Wis. 2d 1, 12–13, 596 N.W.2d 786 (1999).

¶ 61. The sense of unfairness is mitigated somewhat by the fact that the consumer/plaintiff also knew that Dane County was the wrong venue, had the time to change the venue to Rock County, but did not act to change the venue.

¶ 62. I agree with the majority opinion in many respects: This case is a statutory interpretation case arising under the Wisconsin Consumer Act, chapters 421 to 427 of the statutes. The decision turns specifically on the interpretation of Wis. Stat. § 421.401(2). The legislature instructed the court how to interpret chapters 421 to 427 of the statutes. Section 421.101(1) instructs the courts to give a liberal construction and application to provisions of the Wisconsin Consumer Act to promote their underlying purposes and policies. A basic purpose of the Wisconsin Consumer Act is "the protection of customers." Majority op., ¶ 26.[1]

¶ 63. Section 421.401(2) requires dismissal of an action brought in the wrong county unless the defendant "appears and waives the improper venue." The

_____

[1] "[T]he venue provision must be interpreted to protect consumers and favor their participation in the legal process. The legislature understood that consumers are likely to have limited resources, whereas creditors are more apt to have resources and be familiar with the law." *Kett v. Cmty. Credit Plan, Inc.*, 228 Wis. 2d 1, 23, 596 N.W.2d 786 (1999).

parties agree, as do the majority opinion and I, that the defendant in the present case "appeared."[2]

¶ 64. The principal issue in the present case is what the word "waives" means in the statute.

¶ 65. The majority opinion determines that "waives" means "intentional[ly] relinquish[es] . . . the known right to proper venue"[3] and that this intentional relinquishment can be accomplished by an "express statement" or by conduct.[4] According to the majority opinion, waiver by conduct "occurs when a party's conduct is 'so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary.' " Majority op., ¶ 38.[5]

---

[2] I have some other questions about the majority opinion but do not enumerate all of them. For example, I think the majority speaks too broadly in stating at ¶ 32: "To appear and to waive cannot be found in a single act." The accuracy of this generalization will depend on what is viewed as a single act.

The Wisconsin Consumer Act, created by 1971 Wis. Act 239 (published April 18, 1972), refers to "*the* federal consumer credit protection act." Wis. Stat. § 421.102(2)(d) (emphasis added). A federal Consumer Credit Protection Act was adopted a few years before the Wisconsin Consumer Act. *See* Pub. L. 90–321, 82 Stat. 146 (1968) (codified as amended at 15 U.S.C. §§ 1601 et seq.). The majority opinion relies on cases referring to the federal Fair Debt Collection Practices Act, which was adopted *after* the Wisconsin Consumer Act. *See* Pub. L. 95–109, 91 Stat. 874 (1977) (codified at 15 U.S.C. §§ 1692 et seq.). No explanation is given for reliance on this later Act. *See* majority op., ¶¶ 41–43.

The majority opinion at n.10 cites *Tower Auto. Milwaukee, LLC v. Samphere,* an unpublished opinion of the court of appeals, as precedent, contrary to court rules. *See* Wis. Stat. § 809.23(3).

[3] *See, e.g.,* majority op., ¶¶ 36, 37, 38.

[4] Majority op., ¶ 38.

[5] I wonder whether the majority opinion's alternative way of expressing this thought—"affirmative acts unambiguously

169

¶ 66. I disagree that "waives" in Wis. Stat. § 421.401(2) includes waiver by conduct.[6] Rather, I agree with Nuvell Credit that the meaning of "waives" in Wis. Stat. § 421.401(2) requires an *express* waiver of improper venue. An express waiver is an affirmative expression in writing or by oral stipulation on the record in open court. Such an affirmative expression must be voluntarily, knowingly, and intelligently made.

¶ 67. This interpretation of "waives" gives litigants and courts a rule as "bright line" as possible, one that will protect the consumer and discourage confusion and litigation about the collateral issue of waiver by conduct.

¶ 68. This interpretation comports with the legislative statement of the purposes and policies of the Wisconsin Consumer Act. The explicit legislative rule of construction is that the Wisconsin Consumer Act "shall be liberally construed and applied to promote [its] un-

---

demonstrating that his conduct is intentionally undertaken and meant to give up the right to proper venue"—expresses a different test. Majority op., ¶ 38.

[6] I also disagree with the majority opinion's application of its definition of conduct to the facts of the present case.

The majority opinion concludes that although Nuvell Credit knew that the venue was improper and that it could get a dismissal of the action, its conduct of continuing litigation was merely "defending itself," not an intentional relinquishment of the known right to proper venue. Majority op., ¶ 50. If Nuvell Credit's conduct in the present case does not constitute an intentional relinquishment of the known right to proper venue, what conduct would be an intentional relinquishment of the known right to proper venue?

If I were to agree with the majority opinion's "conduct/waiver" approach, I would have to dissent. In addition to filing an answer and appearing, Nuvell Credit participated in discovery. I conclude that Nuvell Credit's conduct constitutes a waiver under the majority opinion's test.

derlying purposes and policies." Wis. Stat. § 421.102(1). The legislature stated the underlying purposes and policies of chapters 421 to 427 as follows in § 421.102(2):

> (a) To simplify, clarify and modernize the law governing consumer transactions;

> (b) To protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants;

> (c) To permit and encourage the development of fair and economically sound consumer practices in consumer transactions; and

> (d) To coordinate the regulation of consumer credit transactions with the policies of the federal consumer credit protection act.

¶ 69. Express waiver promotes the legislative policy of "protect[ing] customers against unfair, deceptive, false, misleading and unconscionable practices by merchants."[7] The consumer/customer is often the defendant, is often unsophisticated about the law, and frequently represents himself or herself, without an attorney. A requirement of express waiver protects the consumer against unwittingly relinquishing a right that the statute provides.

¶ 70. Express waiver also serves the purposes to "simplify" and "clarify" the law governing consumer transactions[8] and to "encourage the development of fair and economically sound consumer practices in consumer transactions."[9] Express waiver is simpler and clearer than construing waiver by conduct and it en-

---

[7] Wis. Stat. § 421.102(2)(b).

[8] Wis. Stat. § 421.102(2)(a).

[9] Wis. Stat. § 421.102(2)(c).

courages the fair and sound practice of clear and explicit communication of consumers' rights in Wisconsin.

¶ 71. Nuvell Credit did not expressly waive its right to a proper venue in the present case. Nuvell Credit did not execute an affirmative expression in writing or enter into an oral stipulation on the record in open court to waive improper venue. Accordingly, I would reverse the decision of the court of appeals and conclude that the circuit court did not err in dismissing the present action.

¶ 72. For the reasons set forth, I write separately to state what I consider the proper interpretation of "waives" in Wis. Stat. § 421.401(2).

¶ 73. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

¶ 74. MICHAEL J. GABLEMAN, J. (*concurring in part, dissenting in part*). I join the majority opinion's definition of "waiver" as used in Wis. Stat. § 421.401(2), which includes waiver by conduct. However, I dissent because I would find that Nuvell's actions in this case did constitute waiver by conduct.

¶ 75. Under § 421.401(2), a circuit court must dismiss an improperly venued action "unless the defendant appears and waives the improper venue." The majority opinion rightly concludes that waiver in this statute is "the intentional relinquishment of a known right." Majority op., ¶ 37. This requires that the defendant (1) "knew the place of proper venue"; (2) "knew that he had the right to dismissal"; and (3) intentionally relinquished those rights. *Id.*, ¶¶ 37–38.

¶ 76. The majority opinion is also correct that a party may intentionally relinquish its rights either expressly or by conduct. *Id.*, ¶ 38 (citing *Fraser v. Aetna*

*Life Ins. Co.,* 114 Wis. 510, 523–24, 90 N.W. 476 (1902); *Estate of Ross v. Ross,* 181 Wis. 125, 134, 194 N.W. 151 (1923)). A party intentionally relinquishes its rights through conduct when the party's actions are "so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary." *Fraser,* 114 Wis. at 523–24. Over and over again, Wisconsin courts have recognized that waiver may be inferred as a matter of law from parties' actions; waiver need not be express. *See, e.g., Milas v. Labor Ass'n of Wisconsin,* 214 Wis. 2d 1, 9–10, 571 N.W.2d 656 (1997).[1] Black's Law Dictionary also makes clear that waiver may be either "express or implied." *Black's Law Dictionary* 1717–18 (9th ed. 2009). "Waiver," then, is a term of art. Unless the statutory or constitutional context clearly indicates otherwise, waiver in Wisconsin may be accomplished expressly or by conduct.[2]

---

[1] *See also Hanz Trucking, Inc. v. Harris Bros. Co.,* 29 Wis. 2d 254, 264–66, 138 N.W.2d 238 (1965); *Estate of Ross v. Ross,* 181 Wis. 125, 134–35, 194 N.W. 151 (1923); *Pabst Brewing Co. v. Milwaukee,* 126 Wis. 110, 117–18, 105 N.W. 563 (1905).

[2] The concurrence concludes that the word "waives" in § 421.401(2) does not include waiver by conduct; waiver may only be express, it suggests. Concurrence, ¶ 66.

The concurrence's analysis has nothing to do with the statute or case law, however. It chooses this approach, ignoring the generally understood meaning of waiver, because it is a simple, "bright line" rule, and because it will better protect consumers. *See id.,* ¶¶ 67–70.

None of these policy-oriented reasons justify changing the well-settled meaning of the word "waives"—a meaning surely known by the legislature when drafting this statute. If the legislature wanted to allow only express waiver under § 421.401(2), it could have said so. The fact that it did not suggests that the legislature intended "waives" to have its ordinary, well-accepted meaning, which includes both express waiver

¶ 77. Whether waiver by conduct has occurred, however, will obviously depend upon the particular conduct in each case. My parting of the ways with the majority occurs not with its statement of the law, but in its application of the law to the facts of this case. In my view, the only reasonable inference that can be drawn from Nuvell's conduct is that it waived its right to object to venue.

¶ 78. A brief overview of the timeline here will be helpful.

¶ 79. Brunton filed this action in the Dane County Circuit Court on December 16, 2005. Nuvell appeared and filed its answer on February 2, 2006, making no venue objection.

¶ 80. On May 23, 2006, Nuvell commenced a replevin action against Brunton in Rock County based out of the same consumer credit transaction. This, of course, was "a claim arising out of a . . . consumer credit transaction" under § 421.401(1), just like the suit at issue here.

¶ 81. On August 9, 2006, Brunton's attorney made Nuvell aware that the current suit was venued in the wrong county under § 421.401(2). Brunton requested that Nuvell stipulate to transferring venue to Rock County, but Nuvell refused that request on August 11, 2006.

¶ 82. Finally, on February 27, 2007, Nuvell moved for summary judgment, seeking dismissal of Brunton's suit because it was venued in Dane County instead of Rock County in violation of § 421.401. Conveniently,

and waiver by conduct. *See Grobarchik v. State,* 102 Wis. 2d 461, 467–68, 307 N.W.2d 170 (1981) (explaining that as a fundamental canon of statutory construction, we presume the legislature used technical terms or terms of art with their technical meaning).

174

the statute of limitations on Brunton's claim had expired just two months prior.[3]

¶ 83. Thus, Nuvell litigated this suit for more than a year before raising its venue objections. Nuvell may have known that venue was improper when filing the replevin action in May 2006, and indisputably knew that venue was improper in August 2006. Therefore, Nuvell knew the place of proper venue, knew it had the right to dismissal, and yet continued to actively litigate for at least six months, and perhaps as many as nine months. I conclude that only one reasonable inference can be drawn from Nuvell's conduct: it intentionally relinquished its right to challenge venue.[4]

¶ 84. For the foregoing reasons, I would affirm the judgment of the court of appeals and respectfully concur in part, and dissent in part.

[3] The one-year statute of limitations would have begun to run with the commission of the allegedly improper debt collection practices. These occurred in November and December 2005, so the statute of limitations would have expired in late 2006.

[4] As the concurrence likewise queries, "If Nuvell Credit's conduct in the present case does not constitute an intentional relinquishment of the known right to proper venue, what conduct would . . . ?" Concurrence, ¶ 66 n.6.