HAGEDORN, J.[1]
¶ 1 Since 1996, M.J.S. has been involuntarily committed to treat his schizophrenia. In 2017, Waukesha County sought-and the circuit court granted-extension of the commitment and the medication order. M.J.S. challenges both orders on appeal. Although we affirm the order extending the underlying commitment, we reverse the medication order because the County failed to prove by clear and convincing evidence that M.J.S. either received the statutorily required explanation pursuant to WIS. STAT. § 51.61(1)(g)4. or affirmatively waived his right to be so advised.[2]
BACKGROUND
¶ 2 The following facts are taken from statements, reports, and testimony received at the extension hearing.
¶ 3 M.J.S. was involuntarily committed for the outpatient administration of medication to treat his schizophrenia. Following release from his initial commitment in 1994, M.J.S. voluntarily stopped taking his medication and was hospitalized several times. M.J.S.'s refusal to self-medicate eventually led to a roadside altercation with police and subsequent recommitment in 1996. M.J.S.'s outpatient commitment for medication has been extended each year since the 1996 incident due to M.J.S.'s continued mental illness, evidence that M.J.S. would not self-medicate, and testimony that a refusal to self-medicate would result in a decline of health that would place M.J.S. and the community at risk.
¶ 4 On January 13, 2017, the County filed a petition seeking an extension of M.J.S.'s commitment. This petition included a report filed by M.J.S.'s case manager, Brett Brockway, discussing M.J.S.'s treatment history, current mental health status, and treatment plan. The petition concluded with a recommendation that M.J.S.'s commitment and medication orders be extended.
¶ 5 On January 16, 2017, a letter was sent to M.J.S. informing him that the hearing on the extension of commitment had been scheduled. The letter was not signed by a judge; it was signed by Darcey Lowerre from the "Waukesha County Juvenile Court Office." The letter also informed M.J.S. that he was "required to be examined by" both Dr. Cary Kohlenberg and Dr. Terrill Bruett prior to the extension hearing. The letter stated that he "must call" Kohlenberg and Bruett to schedule his appointments. However, the letter also confusingly informed M.J.S., "Unless otherwise noted, the doctors will contact you ." The letter further explained that an attorney would be appointed for M.J.S., and he was required to attend the hearing unless he contacted his attorney to waive his appearance.
¶ 6 M.J.S. did not contact the physicians to schedule an examination, nor did the physicians try to contact him. Additionally, although the County routinely ensures that M.J.S. makes it to his appointments, there is no evidence the County did anything to help him schedule this appointment. When Kohlenberg did not hear from M.J.S. regarding the examination, he issued his report and recommendation for extension of commitment based solely on Brockway's report and a review of M.J.S.'s treatment records.
¶ 7 On February 10, 2017, the County mailed M.J.S. a notice of the hearing and list of witnesses. M.J.S., however, failed to appear on February 28, 2017, and the hearing was rescheduled to March 7, 2017.
¶ 8 At the rescheduled extension hearing-this time with M.J.S. present-Brockway and Kohlenberg both testified and offered written reports recommending that M.J.S.'s commitment be extended. Brockway testified regarding M.J.S.'s treatment history, M.J.S.'s belief that he does not have a mental illness, and M.J.S.'s statements that he would stop taking the medication if it were his choice.[3]
¶ 9 Kohlenberg testified that, based on his review of M.J.S.'s treatment history, it is apparent that M.J.S. continues to suffer from schizophrenia. Although manageable when properly medicated, Kohlenberg opined that M.J.S.'s treatment history indicates that M.J.S. would not take his medication absent a continued court-ordered commitment. Kohlenberg further testified that M.J.S.'s history of noncompliance would make him a likely candidate for recommitment if the extension order was not granted.
¶ 10 Kohlenberg then testified regarding what he would have told M.J.S. had there been an actual examination. Specifically, Kohlenberg testified that he would have discussed the advantages and disadvantages of the medication with M.J.S. He also testified that inpatient institutionalization would be an alternative to outpatient commitment. Kohlenberg concluded that M.J.S. would be incapable of applying the information regarding the advantages, disadvantages, and alternatives to the treatment.
¶ 11 Based on the testimony and arguments at the hearing, the circuit court determined that M.J.S. was dangerous and extended his commitment. The court reasoned that "if treatment were withdrawn today it is substantially likely that [M.J.S.] would become a proper subject again for commitment." The court also concluded that continuation of the involuntary medication order was warranted. Although the court noted that "an individual has the right to have a discussion" about the medication, it did not "believe that an individual can forestall a consideration of a medications order by simply not showing up." The court acknowledged that M.J.S. had not received an explanation of the advantages, disadvantages, and alternatives to medication, but concluded that the County need not actually provide the required explanation because M.J.S. chose "through his conduct" "not to be present to hear that information."
¶ 12 Additionally, the court determined, regardless of whether M.J.S. was actually examined, the record and witness testimony provided adequate indicia that M.J.S.'s "schizophrenia... would cause an impediment in term[s] of his ability to process that information in a meaningful way and to apply it to his own circumstance." Thus, the court concluded that M.J.S. was "substantially incapable of applying that information which he chose not to hear in a meaningful way in order to make an informed choice as to whether to accept or to refuse psychotropic medication." In the end, the circuit court extended the medication order because (1) M.J.S. "chose" not to schedule his examination, and (2) the witness testimony and Kohlenberg's report were sufficient to conclude that M.J.S. was substantially incapable of applying the relevant information regarding the medication.
DISCUSSION
¶ 13 In extension proceedings, the County carries the burden to prove all elements of its case by clear and convincing evidence. Waukesha Cty. v. J.W.J. , 2017 WI 57, ¶ 19, 375 Wis. 2d 542, 895 N.W.2d 783 ; Outagamie Cty. v. Melanie L. , 2013 WI 67, ¶ 83, 349 Wis. 2d 148, 833 N.W.2d 607. Whether the County has met its statutory burden is a mixed question of law and fact. J.W.J. , 375 Wis. 2d 542, ¶ 15 ; Melanie L. , 349 Wis. 2d 148, ¶¶ 38-39. In evaluating whether the County met its burden, we accept the circuit court's findings of fact unless clearly erroneous, but independently evaluate how those facts apply to the law. Melanie L. , 349 Wis. 2d 148, ¶¶ 38-39.
A. Underlying Commitment
¶ 14 WISCONSIN STAT. § 51.20 details the statutory process by which the County can extend a person's commitment period. Sec. 51.20(13)(g)3. In order to do so, the County must prove that "the individual is mentally ill ... and is a proper subject for treatment" and "the individual is dangerous." Sec. 51.20(1)(a) ; see also J.W.J. , 375 Wis. 2d 542, ¶ 18. The initial term of commitment may not exceed six months. Sec. 51.20(13)(g)1. When seeking extension of a term of commitment, the County "must establish the same elements with the same quantum of proof." J.W.J , 375 Wis. 2d 542, ¶ 20. However, when seeking extension, the County may establish dangerousness-the second element-"by showing 'a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.' " Id. (quoting § 51.20(1)(am) ). An order extending a term of involuntary commitment may not exceed one year. Sec. 51.20(13)(g)1.
¶ 15 M.J.S. argues the County did not prove that he would have been a proper subject for treatment if treatment were withdrawn. He specifically takes issue with Kohlenberg's and Brockway's reliance on what he feels was "a vague description of what happened in 1996" resulting in his commitment. M.J.S. maintains that Kohlenberg failed to explain "what dangerous conduct [he] would engage in if treatment were withdrawn now ." The circuit court concluded otherwise, and we agree.
¶ 16 M.J.S.'s treatment record revealed that after release from his initial commitment in 1994, he voluntarily stopped taking his medication and was hospitalized several times. This eventually led to an incident where he "fought with the police after they had confronted him per his driving his bicycle erratically on a state highway," resulting in his recommitment in 1996. Kohlenberg testified that M.J.S. currently suffered from schizophrenia-a diagnosis M.J.S. does not challenge on appeal-but the symptoms had been manageable through medication. Brockway's testimony and M.J.S.'s treatment record, however, also revealed that M.J.S. did not believe he had a mental illness and refused to consent to treatment. In fact, he believed that the medication was poison.
¶ 17 We are unpersuaded by M.J.S.'s insistence that his earlier incident with police does not support a finding that he would be a proper subject for treatment if it were withdrawn. In fact, the absence of a similar incident in the twenty-one years following supports the conclusion that M.J.S.'s illness had been successfully managed through the commitment process. This testimony was sufficient to demonstrate "based on [M.J.S.'s] treatment record," see WIS. STAT. § 51.20(1)(am), he would be a proper subject for treatment if treatment were withdrawn.[4] Accordingly, we affirm the order extending M.J.S.'s commitment.
B. Order for Involuntary Medication
¶ 18 Although we affirm the underlying commitment, we reverse the order for involuntary medication because the County failed to provide an explanation of the advantages, disadvantages, and alternatives to medication as required by WIS. STAT. § 51.61(1)(g)4., and failed to show M.J.S. relinquished his right to be so advised.
1. Explanation Required for Extension of Commitment
¶ 19 WISCONSIN STAT. § 51.61, entitled "Patients rights," grants a person whose involuntary medication the County seeks to continue (the "patient") the right to refuse medication and treatment. Sec. 51.61(1)(g). The court begins with the presumption that the patient is competent to refuse treatment. Melanie L. , 349 Wis. 2d 148, ¶ 89. To overcome this presumption, § 51.61(1)(g) dictates that the County must prove:
[B]ecause of mental illness ... and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual , one of the following is true:
a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.
b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness ... in order to make an informed choice as to whether to accept or refuse medication or treatment.
Sec. 51.61(1)(g)4. (emphasis added).
¶ 20 Therefore, where the patient invokes his or her personal right to refuse treatment under this statute, the County must prove that the patient is either (1) "incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives" or (2) "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives" to medication "in order to make an informed choice" to either accept or refuse to accept the medication. Winnebago Cty. v. Christopher S. , 2016 WI 1, ¶ 28, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted).
¶ 21 The County must first, however, establish a necessary prerequisite. WISCONSIN STAT. § 51.61(1)(g)4. explicitly provides that the County cannot prove incapacity until "after the advantages and disadvantages of and alternatives to ... medication or treatment have been explained." (Emphasis added.) Our supreme court has interpreted this language as requiring the County to provide this explanation. The explanation must provide enough information upon which the patient can make an "informed choice" regarding his or her medication.[5] Melanie L. , 349 Wis. 2d 148, ¶¶ 55, 67. Melanie L . explains:
A person subject to a possible mental commitment or a possible involuntary medication order is entitled to receive from one or more medical professionals a reasonable explanation of proposed medication . The explanation should include why a particular drug is being prescribed, what the advantages of the drug are expected to be, what side effects may be anticipated or are possible, and whether there are reasonable alternatives to the prescribed medication. The explanation should be timely, and, ideally, it should be periodically repeated and reinforced . Medical professionals and other professionals should document the timing and frequency of their explanations so that, if necessary, they have documentary evidence to help establish this element in court.
Id. , ¶ 67 (emphasis added). Thus, before the County can carry its burden to prove the patient's incapacity to apply an understanding of the requisite explanation, the County must prove that a "timely, and, ideally ... periodically repeated and reinforced" explanation has been provided. Id.
¶ 22 It is undisputed that Kohlenberg never provided the requisite explanation to M.J.S. In fact, the record indicates that M.J.S. has not received an explanation since sometime prior to 2010.[6] While Kohlenberg testified as to what he would have explained to M.J.S. regarding the advantages, disadvantages, and alternatives to the medication options, M.J.S. never actually received the explanation Melanie L. says is required by WIS. STAT. § 51.61.
2. Relinquishment of the Right to an Explanation
¶ 23 The County follows the circuit court's lead and suggests M.J.S. relinquished his right to the statutorily required explanation. Our law recognizes two possible legal categories for this contention: forfeiture and waiver. Though related in certain respects, they "embody very different legal concepts." State v. Ndina , 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612. The County argues M.J.S. "waived" the right to the explanation; M.J.S. frames the argument in terms of "forfeiture." But neither party meaningfully addresses the distinction between these concepts or how they might apply here.
¶ 24 Forfeiture is the "failure to make the timely assertion of a right" at trial. Id. , ¶¶ 29-30 (citation omitted). Allowing forfeiture "facilitates fair and orderly administration of justice," "encourages parties to be vigilant lest they lose a right by failing to object to its denial," and "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." State v. Pinno , 2014 WI 74, ¶ 56, 356 Wis. 2d 106, 850 N.W.2d 207 (quoting Ndina , 315 Wis. 2d 653, ¶ 30 ). At the same time, however, the pressures of trial and the high price of the loss of a right on appeal requires that rights subject to forfeiture be typically limited to those "whose relinquishment will not necessarily deprive a party of a fair trial" and "whose protection is best left to the immediacy of the trial." State v. Soto , 2012 WI 93, ¶ 36, 343 Wis. 2d 43, 817 N.W.2d 848.
¶ 25 In contrast, "Waiver is the intentional relinquishment ... of a known right." Ndina , 315 Wis. 2d 653, ¶ 29. "Intentional relinquishment" occurs "when a party's conduct is so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary." See Brunton v. Nuvell Credit Corp. , 2010 WI 50, ¶ 38, 325 Wis. 2d 135, 785 N.W.2d 302 (citation omitted) (noting, "[s]tated differently," waiver is shown "by affirmative acts unambiguously demonstrating that [the party's] conduct is intentionally undertaken and meant to give up the right"). Additionally, "[w]aiver can be either express or by conduct." State v. Washington , 2018 WI 3, ¶ 39, 379 Wis. 2d 58, 905 N.W.2d 380. Because the "intentional relinquishment" standard is higher than that required of forfeiture, "waiver typically applies to those rights so important to the administration of a fair trial that mere inaction on the part of a litigant is not sufficient to demonstrate that the party intended to forgo the right." Soto , 343 Wis. 2d 43, ¶ 37.
¶ 26 "[W]hen determining whether a right is subject to forfeiture or waiver, we look to the constitutional or statutory importance of the right, balanced against the procedural efficiency in requiring immediate final determination of the right." Id. , ¶ 38. Thus, "where a right ... is one of clear importance to the fair administration of justice, we will hold that the right is subject to waiver, rather than forfeiture."Id.
¶ 27 The right at stake in this case-the right to be informed of medical options and ultimately to refuse medication-represents a competent individual's "significant liberty interest in avoiding forced medication of psychotropic drugs." Melanie L. , 349 Wis. 2d 148, ¶ 43 (citation omitted). Indeed, the "forcible injection of medication into a nonconsenting person's body"-such as that to which M.J.S. was subjected-"represents a substantial interference with that person's liberty." Id. (citation omitted). The statutorily required explanation is not just a magnanimous nicety. It is an information disclosure that the County must prove as a prerequisite to forcibly injecting medication into someone who does not want it. The statutory right is highly important. On the other side, we see little procedural efficiency in allowing this statutory element to be dispensed with via forfeiture. The balancing required under our precedents suggests to this court that the right to an explanation of the advantages, disadvantages, and alternatives to medication is too important, too central to the liberty interests involved, to be dispensed with by the failure to timely object. While briefing on this matter would have been helpful, this court is inclined to conclude that this statutory right may not be forfeited-only waived.
¶ 28 The County has failed to establish that M.J.S. has waived his right to an explanation-a legal question we determine independently. See Soto , 343 Wis. 2d 43, ¶ 14. The County relies on two key facts to support its waiver argument-the failure to schedule the appointment and the failure to seek an adjournment at trial. These two facts do not come close to actions or inactions "so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary." Brunton , 325 Wis. 2d 135, ¶ 38 (citation omitted).
¶ 29 Regarding the failure to schedule the appointment, the letter itself informed M.J.S. that he would be contacted by the doctors, and it instructed him to call and set up the appointment. This mixed-message letter-not even an order signed by a judicial officer-cannot reasonably be grounds to conclude M.J.S. intentionally relinquished his right. To be relieved of its burden to prove an element, the County must do more than simply rely on a confusing letter from court staff. Again, it is the County that is statutorily responsible for meeting the statutory prerequisites and proving its case to the court. We agree M.J.S. cannot just plug his ears with his fingers to avoid hearing the advantages, disadvantages, and alternatives to treatment, and then subsequently complain that he was not provided the statutory explanation. But the record reflects nothing of the sort here.
¶ 30 Regarding the County's second argument, it was not M.J.S.'s responsibility to seek adjournment of the hearing to allow him to meet with the doctors. It is the County that must ensure it has the necessary evidence. Again, it is the County that carries the burden to prove by clear and convincing evidence the elements necessary to extend a commitment. Melanie L. , 349 Wis. 2d 148, ¶ 83.
¶ 31 For these reasons, the County has not shown M.J.S. waived his right to receive the statutorily required explanation.
CONCLUSION
¶ 32 We affirm the circuit court's order extending M.J.S.'s underlying commitment. However, our law requires the County, as a prerequisite to forcible administration of medication, to explain "the advantages and disadvantages of and alternatives to ... medication or treatment." WIS. STAT. § 51.61(1)(g)4. ; Melanie L. , 349 Wis. 2d 148, ¶ 53. That did not happen here. Nor has the County shown that M.J.S.'s failure to schedule an appointment based on a confusing letter from court staff constitutes waiver by M.J.S. of his right to hold the County to its burden of proof. Accordingly, we reverse the circuit court's order for involuntary medication.
By the Court. -Orders affirmed in part and reversed in part.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(d) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

We originally decided this case on May 30, 2018, and the County filed a motion to reconsider. We granted the motion to reconsider and withdrew the original opinion. This modified opinion follows our reconsideration of that decision.

M.J.S. said he would stop taking the medication because he believes court-mandated medication is "poison" and "caused a heart attack."

M.J.S. does not contend that Kohlenberg could not render an opinion based on his treatment records. He merely argues that the treatment record does not show that he would be a proper subject for treatment if it were withdrawn.

Our supreme court in Melanie L . defined "informed choice" as "a choice based on an informed understanding of the viable options with respect to medication or treatment. The key word in the statutory phrase is 'choice,' which means the 'power, right, or liberty to choose,' or an 'option.' " Outagamie Cty. v. Melanie L. , 2013 WI 67, ¶ 76, 349 Wis. 2d 148, 833 N.W.2d 607 (citation omitted).

The County does not argue that the most recent explanation would qualify as "timely" under the Melanie L. standard and fails to even indicate when that last explanation actually took place. Melanie L. , 349 Wis. 2d 148, ¶ 67. Therefore, we need not address the outer bounds of Melanie L. 's requirements that the explanation be "timely ... and periodically repeated and reinforced." Id.